Adam Harrison Garner (035482004)
Melanie J. Garner (004982004)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
**Attorneys for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY STALLMAN<br>1155 Orme Circle NE<br>Atlanta, GA 30306,<br><br>    Plaintiff<br><br>v.<br><br>FIRST UNUM LIFE INSURANCE<br>COMPANY<br>666 3rd Avenue, Suite 301<br>New York, NY 10017,<br><br>and<br><br>KASOWITZ, BENSON & TORRES, LLP<br>1633 Broadway<br>New York, NY, 10019, US<br><br>and<br><br>KASOWITZ, BENSON & TORRES, LLP<br>LONG TERM DISABILITY PLAN<br>1633 Broadway<br>New York, NY, 10019, US<br><br>    Defendant(s) | No.<br><br><br><br><br><br>__COMPLAINT__ |

Plaintiff Jeremy Stallman, through his undersigned counsel, for his Complaint against First Unum Life Insurance Company ("First Unum"), Kasowitz, Benson & Torres, LLP ("KBT"), and the Kasowitz Benson & Torres, LLP Long Term Disability Plan ("the Plan") states as follows.

## INTRODUCTION

1.      This action is brought pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*("ERISA") and seeks to hold Defendants responsible for First Unum's wrongful denial of long-term disability insurance benefits to Plaintiff under the Plan.

## THE PARTIES

2.      Plaintiff is a resident of Georgia and at all times relevant to the Complaint was a participant in the Plan.

3.      The Plan is an ERISA-regulated "employee welfare benefit plan" as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1).  Upon information and belief numerous Plan participants reside in this District and Vicinage.

4.      Defendant KBT is limited liability partnership organized and existing under the laws of the State of New York with its principal place of business in New York, New York. It maintains an office in this District and Vicinage at One Gateway Center, Suite 2600, Newark, NJ 07102.

5.      KBT is the Plan's "Sponsor" and "Administrator" as those terms are defined in Section 3(16) of ERISA, 29. U.S.C. § 1002(16).  KBT is a Plan fiduciary pursuant to Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

6.      First Unum is an insurance company organized and existing under the laws of the State of New York with its principal place of business in Garden City, New York.

7.     First Unum issued a group insurance policy ("the Group Policy") to KBT to fund disability benefits payable under the Plan and was responsible for adjudicating claims for Plan benefits.  A copy of the Group Policy is appended hereto as Exhibit A. Thus, because it exercised control over Plan assets, it too is a Plan fiduciary.  29 U.S.C. § 1002(21).

## JURISDICTION AND VENUE

8.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

9.     Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391 because the Plan was administered in this District, Plan participants reside in this District, and Defendants may be found in this District.

10.    The Court has personal jurisdiction over Defendants as the Plan is administered in this District and Division, Defendants regularly transact business in this District and Division, and Defendants have consented to the Court's personal jurisdiction.  This Court also has personal jurisdiction over Defendants because they have significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## FACTS COMMON TO ALL COUNTS

11.    Plaintiff was formerly employed as an attorney at KBT, beginning his employment in 2011.

12.    While he was employed at KBT, Plaintiff participated in the Plan.

13.     In 2019, Plaintiff's cousins were diagnosed with Amyotrophic Lateral Sclerosis ("ALS"), which is also known as Loug Gehrig's Disease, at around age 50.  Their father had developed ALS years before them as well.

14.     ALS is a progressive neurodegenerative disease that affects nerve cells in the brain and spinal cord.

15.     Individuals diagnosed with ALS will eventually experience the loss of mobility, the ability to perform daily tasks such as dressing and writing, verbal communication, swallowing, and even breathing.

16.     ALS leads to a shortened lifespan and death, usually within 2-5 years of diagnosis.

17.     According to the ALS Association, in families with genetic ALS, there is a 50% chance each offspring will inherit the gene mutation and may develop the disease.

18.     Given the family history of ALS, Plaintiff learned that he also had a 50% chance of developing ALS in the future.

19.     Plaintiff became severely depressed knowing that he was likely to develop ALS himself.

20.     Plaintiff also suffered a pelvic fracture on September 27, 2019, after falling off a skateboard and sought treatment from Dr. Webb, an orthopedic specialist, which involved undergoing physical therapy.

21.     Plaintiff took a medical leave of absence from KBT pursuant to the Family and Medical Leave Act of 1993 ("FMLA") and concurrently applied for short-term disability benefits under KBT's short-term disability plan.

22.     On October 23, 2019, Plaintiff began seeing Dr. Neil Rappaport, PhD, who was referred to him by a friend as the depression he was experiencing from learning that he was likely to develop ALS was unrelenting.

23.     Dr. Webb completed an Attending Physician Statement that indicated the claimant was released to return to work without any restrictions or limitations, effective November 1, 2019, for his pelvic fracture.

24.     Dr. Webb did not opine as to Plaintiff's work capacity due to his depression, which had been and remained disabling.

25.     Although Plaintiff was cleared to resume work following his pelvic injury, he was unable to do so due to the escalating severity of his ongoing psychological crisis.

26.     During a subsequent meeting with Dr. Rappaport on November 11, 2019, Plaintiff expressed concern about his ability to heal from his mental health issues and return to work, stating that it was the toughest situation he had ever faced in his life.

27.     According to Dr. Rappaport's notes, several other relatives had either tested positive, refused to be tested, or were already suffering from ALS.

28.     On December 10, 2019, Plaintiff learned that he was almost certain to develop ALS himself.

29.     Plaintiff had been living in a state of anxiety and fear even before he decided to seek professional psychological help. When he finally learned that he was nearly certain to develop ALS, it profoundly exacerbated his pre-existing major depressive disorder.

30.     Dr. Rappaport completed an Attending Physician Statement on January 5, 2020, stating that Plaintiff was unable to work due to a major depressive disorder.

31.     On January 9, 2020, the claimant submitted updated claim forms to Unum, indicating that he had started receiving treatment for depression on October 23, 2019.

32.     The Group Long-Term Disability Insurance Policy funding long-term disability benefits under the Plan states that the benefit will be paid for the duration of the disability if the insured provides First Unum with proof of ongoing disability and regular visits to a physician.

33.     Proof of disability and regular visits to Dr. Rappaport were provided to First Unum.

34.     Plaintiff consistently saw Dr. Rappaport on a biweekly to weekly basis from October 23, 2019 onward.

35.     According to the group policy funding the Plan's disability benefits, "Disability'' and "disabled" mean that because of injury or sickness the insured cannot perform each of the material duties of his regular occupation.

36.     As a litigation attorney at a large international law firm, the mental and cognitive occupational demands include effectively communicating with others, making judgments and decisions, performing a variety of duties, working long hours under stress, persuading and motivating others to change their attitudes or opinions, and accepting responsibility for formulating, implementing, controlling, and directing the activities of others.

37.     According to a statement provided by Dr. Rappaport on September 24, 2020, he confirmed that Plaintiff's level of functioning was insufficient to meet the demands of his highly demanding occupation.

38.     Plaintiff had a strong passion for his profession and his inability to continue pursuing it intensified his distress. Plaintiff excelled as a lawyer and aspired to resume his legal practice, partly with the intention of reclaiming his sense of self. However, his psychological condition prevented him from continuing to practice law.

39.     On September 25, 2020, First Unum requested an additional extension of the deadline to complete the claim review. The timeframe for reaching a decision was extended until October 9, 2020.

40.     On October 7, 2020, First Unum erroneously denied Plaintiff's Long-term disability claim, stating that the medical evidence did not support his claim and that he was not covered under the policy starting from November 1, 2019.

41.     Plaintiff timely appealed First Unum's denial of his claim for LTD benefits.

42.     Although it had the right to have Plaintiff evaluated by a physician in connection with his claim and appeal, First Unum chose not to do so.

43.     First Unum had Plaintiff's appeal reviewed by Peter Brown, MD, a psychiatrist who has been employed at Unum Group for many years and has not treated patients since the year 2000.

44.     Dr. Brown did not speak to Plaintiff.

45.     Dr. Brown opined that Plaintiff was only disabled from his own occupation as a litigation attorney at an AmLaw 100 law firm due to depression between December 10, 2019 and February 7, 2020 only.

46.     First Unum provided Plaintiff the opportunity to review and respond to Dr. Brown's report, as is required by the applicable regulations implementing ERISA.

47.     Plaintiff responded to Dr. Brown's report in a letter dated July 24, 2021, noting among other things, that Dr. Brown's opinion and First Unum's review of Plaintiff's claim was contrary to the terms of Unum's Regulatory Settlement Agreement ("RSA") with the United States Department of Labor and numerous States and territories. A copy of the RSA is appended hereto as Exhibit B.

48.     First Unum denied Plaintiff's appeal in a letter dated August 13, 2021 and advised him that he had exhausted his appeals under the Plan and of his right to bring a civil action under Section 502(a) of ERISA, 29 U.S.C. § 1132(a).

49.     Plaintiff has exhausted his internal appeals under the terms of the Plan and all conditions precedent to filing the instant lawsuit have been completed.

**COUNT I – CLAIM FOR BENEFITS PURSUANT TO
SECTION 502 (a)(1)(B) OF ERISA, 29 U.S.C. § 1132(a)(1)(B)**

50.     Plaintiff incorporates paragraphs 1 through 49 of the Complaint as if they were set forth at length herein.

51.     Plaintiff has exhausted his administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

52.     Plaintiff was a disabled from performing the material duties of his own occupation.

53.     The denial of Plaintiff's claim for benefits was erroneous, contrary to the terms of the Plan, *de novo* wrong, in contravention of the RSA, and an abuse of discretion.

54.     First Unum failed to provide Plaintiff with a full and fair review of his claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1.

55.     Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to his under the terms of his Plan, to enforce his rights under the terms of the Plan, or to clarify his rights to future benefits under the terms of the Plan.

56.     As a result of Defendants' denial of Plaintiff's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Plaintiff to a declaration of rights clarifying the benefits to which he is entitled under the Plan.

WHEREFORE, Plaintiff prays the Court grant him the following relief with respect to Count I of his Complaint:

a. That the Court enter judgment in favor of Plaintiff and against Defendants and award him all past due disability benefits with interest;

b. That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

c. That the Court award Plaintiff his reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendants; and

d. That the Court award Plaintiff such other relief as it deems just, necessary, or proper.

### LOCAL RULE 201.1 CERTIFICATION

I hereby certify that that the amounts recoverable in this action exceed the sum of $150,000 exclusive of interest and costs and any claim for punitive damages

Respectfully submitted,

/s/ Adam H. Garner
Adam Harrison Garner (035482004)
Melanie J. Garner (004982004)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 550
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

*Attorneys for Plaintiff*

Dated: October 6, 2023