

One Penn Center
1617 John F. Kennedy Boulevard, Suite 550
Philadelphia, PA 19103
www.garnerltd.com

Adam H. Garner
Admitted to Practice in PA|NJ|MD

adam@garnerltd.com
Tel. (215) 645-5955
Fax (215) 645-5960

April 4, 2024

The Honorable Leda Dunn Wettre
United States District Court
  for the District of New Jersey
50 Walnut Street
Newark, NJ 07102

    Re: *Stallman v. First Unum Life Ins. Co., et al.*
       No. 23-cv-20975-JXN-LDW

Dear Judge Wettre:

  In accordance with your instructions following the parties' settlement conference in the above-referenced matter, please accept this letter as Plaintiff's pre-motion letter regarding the scope of permissible discovery in this matter. The parties have met and conferred in good faith and have been unable to reach an agreement on the scope of permissible discovery. As is discussed in further detail below, the facts surrounding this case, as well as applicable law, permit Plaintiff to obtain discovery into Defendant First Unum Life Insurance Company's ("First Unum") inherent financial conflict of interest as the adjudicator and payor of long-term disability claims under the long-term disability plan at issue in this case.

**I.**  **<u>INTRODUCTION</u>**

  As the Court may recall, Plaintiff Jeremy Stallman was an attorney at Defendant Kasowitz Benson & Torres, LLP ("KBT"). KBT sponsors the Kasowitz Benson & Torres, LLP Employee Benefits Plan ("the Plan"), which is an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*("ERISA"). Mr. Stallman was a participant in the Plan, which provided, among other benefits, short-term disability ("STD") and long-term disability ("LTD") benefits. The Plan's STD benefits are self-funded, but claims are administered by First Unum. First Unum fully insures the Plan's LTD benefits and is responsible for adjudicating claims under the Plan.

Hon. Leda Dunn Wettre
April 4, 2024

      Mr. Stallman submitted a claim for STD and LTD benefits to First Unum. It approved his STD claim and paid benefits for the maximum duration such benefits were payable. KBT bore the expense of paying Mr. Stallman's STD claim. When, however, First Unum considered Mr. Stallman's LTD claim, for which it bore financial responsibility, it denied his claim contending that he had failed to satisfy the LTD program's 180-day elimination period that ran concurrently with the period during which Mr. Stallman was receiving STD benefits.

      Mr. Stallman filed suit against Defendants seeking benefits and other relief against Defendants pursuant to 29 U.S.C. § 1132(a)(1)(B).

## II.    GOVERNING LAW

      There is nothing in the text of ERISA itself, its implementing regulations, or the Federal Rules of Civil Procedure limiting the scope of discovery in an ERISA benefits claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B). In the roughly 50 years since ERISA's passage, the Supreme Court has never addressed the permissible scope of discovery in an ERISA benefits action. Nonetheless, there are judicially created limitations on discovery in claims for benefits arising under ERISA.

      A claim for benefits under 29 U.S.C. § 1132(a)(1)(B) is akin to a breach of contract claim and is reviewed *de novo* unless the employee benefit plan at issue contains a clause granting discretionary authority to the plan administrator and/or applicable claim fiduciary to construe the terms of the plan and determine eligibility for plan benefits in which case the administrator's adverse claim determination is reviewed for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When, as is the case here as to First Unum, the party responsible for adjudicating claims for plan benefits is also the entity responsible for paying such claims, that entity has an inherent conflict of interest as a matter of law. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). That conflict of interest is a factor for the court to consider in assessing whether an administrator abused its discretion. *Howley, v. Mellon Fin. Corp.,* 625 F.3d 788, 794 (3d Cir. 2010) (citing *Glenn*, 554 U.S. at 116-17).

      Assuming deferential review applies to Mr. Stallman's claim,[1] discovery is generally limited to the so-called "administrative record,"[2] except that Plaintiff may seek discovery into the completeness of the record and the insurer's financial conflict of interest as the adjudicator and payor of claims. *See, e.g., Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 273-274 (3d Cir. 2021) (discussing conflict discovery); *Howley v. Mellon Fin. Corp.,* 625 F.3d 788, 793-

---

[1] Plaintiff does not presently contest, for purposes of seeking discovery, that the abuse of discretion standard of review applies to his claim.

[2] The term "administrative record" is not found in ERISA and is a misnomer as it equates a claim for benefits with an administrative agency adjudication, which it is not. *See, e.g., Fish v. Unum Life Ins. Co. of America*, 229 F.R.D. 699, 701 (M.D. Fla. 2005) (rejecting the comparison of an ERISA benefits claim to an administrative agency appeal).

Hon. Leda Dunn Wettre
April 4, 2024

---

94 (3d Cir. 2010) (same); *Dwyer v. Unum Life Ins. Co. of Am.,* 470 F. Supp. 3d 434, 440 (E.D. Pa. 2020) (permitting discovery into the completeness of the so-called "administrative record" on *de novo* review); *Fish v. Unum Life Ins. Co. of America*, 229 F.R.D. 699 (M.D. Fla. 2005) (permitting discovery into the completeness of the record on deferential review).

### III. THE DISCOVERY SOUGHT IN THIS CASE

In the present matter, Plaintiff seeks limited discovery into the completeness of the so-called administrative record and limited discovery into First Unum's well-documented and inherent financial conflict of interest. The record appears to be incomplete and should be supplemented with additional material that was available to First Unum and which is in its possession. First Unum's inherent financial conflict of interest appears to have impacted its decision making in this case, and the discovery sought is consistent with that which First Unum or its related entities have been required to produce in other cases.

#### A. Completeness of the Record

The Third Circuit has defined the term "administrative record" as follows:

> The administrative record consists of the materials before the fiduciary who makes the benefit decisions on internal review, and it typically contains relevant plan documents (such as an insurance policy), the claim file (the claim, supporting information supplied by the claimant, as well as information related to the claim that was considered, collected, or generated by the fiduciary), and the fiduciary's final determination with respect to the claim.

*Noga*, 19 F.4th at 272; *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *see also Helton v. AT&T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013) (noting that on deferential review the court may consider the administrative record produced in litigation and all information "known to the administrator when it rendered its decision"); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 632 n.4 (9th Cir. 2009) ("In the ERISA context, the 'administrative record' consists of 'the papers the insurer had when it denied the claim.'") (citations and quotations omitted); *Chacko v. AT&T Umbrella Benefit Plan No. 3*, No. 2:19-CV-01837-DAD-DB, 2023 WL 5806455, at *13, __ F. Supp. 3d __ (E.D. Cal. Sept. 7, 2023) (same); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 463 (7th Cir. 2001) (explaining information within the employer's control the claims reviewer did not consider, but was accessible, was nevertheless before the administrator and is part of the record); *see Vallone v. CAN Fin. Corp.*, No. 98 C 7108, 2000 U.S. Dist. LEXIS 6763, at *7 (N.D. Ill. May 16, 2000) (explaining that the administrative record should contain all written materials germane to the issue at hand, and that if the record indicates all relevant information was not included, the plaintiff can obtain discovery thereof).

Hon. Leda Dunn Wettre
April 4, 2024

      The foregoing case law is consistent with 29 C.F.R. § 2560.5031-1, which sets forth the minimum standards for a full and fair review of an ERISA benefit claim. The regulation requires the administrator to produce to the claimant as part of and following the claims process all "relevant" documents. A document is "relevant" under ERISA benefit claims regulation if it was:

    (i)      Was relied upon in making the benefit determination;

    (ii)     Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

    (iii)    Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

    (iv)    In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

      In the present matter, it is clear that some elements of the so-called administrative record are missing, and others may be missing. They are: 1) Mr. Stallman's STD claim file; 2) Unum's claims manual and guidelines; and 3) various emails or instant messages related to Mr. Stallman's claim. Each will be addressed in turn:

      **1.     Mr. Stallman's STD Claim File**

      Mr. Stallman's STD claim file has not been included in the record produced to date. First Unum has advised that it will not voluntarily produce it. Mr. Stallman's STD claim file is plainly relevant to his LTD claim—its contents were known to First Unum at the time it adjudicated his LTD claim. As such, it is part of the "administrative record" and should be included with it.

      Unum determined that Mr. Stallman was disabled from his own occupation for purposes of receiving STD benefits for the same period of time it determined that he was *not* disabled from his own occupation for purposes of receiving LTD benefits. These positions are irreconcilable. Moreover, they are inconsistent with Unum's own standard "administrative services only" contract, which it uses for administering self-funded STD plans and which provides that it may use information collected in handling self-funded STD claims for purposes of adjudicating LTD claims. *See* example of a Unum ASO Agreement, enclosed as Exhibit A.

4

Hon. Leda Dunn Wettre
April 4, 2024

---

Underscoring the absurdity in First Unum's position, in at least one prior case, where (as is the case here) one of First Unum's sister companies both administered the self-funded STD claim and fully insured LTD claim, it voluntarily produced the STD claim file in *Dwyer v. Unum Life Ins. Co. of Am.*, No. 2:19-cv-04751-GAM (E.D. Pa. 2019) and it was subsequently considered by the Court in resolving the merits of the *Dwyer* Plaintiff's claim. *See* Unum Life's Responses and Objections to Plaintiff's First Set of Document Requests, enclosed as Exhibit B, at Response No. 15; *Dwyer v. Unum Life Ins. Co. of Am.*, 548 F. Supp. 3d 468, 478 (E.D. Pa. 2021). Additionally, numerous courts have held that STD files, workers' compensation files, and other similar records are part of the administrative record. *See*, *e.g.*, *Chacko*, 2023 WL 5806455 at *14 (including worker's compensation file in administrative record); *Suson v. The PNC Financial Services Group, et al*, No. 15-C-10817, ECF No. 53, at PageID #653 (N.D. Ill. November 28, 2016) (enclosed as Exhibit C and compelling production of STD file as part of the administrative record). Thus, these records should be produced.

### 2.   Unum's Claim Guidelines

Unum has agreed to produce its claims manual and claim guidelines to Plaintiff but has taken the position that they are not relevant to Plaintiff's claims nor are they part of the administrative record. Plaintiff disagrees with this contention for, among other reasons, the case law cited above as well as the Regulatory Settlement Agreement ("RSA")[3] but does not believe that there is presently a discovery dispute as to the claims guidelines. Plaintiff reserves the right to contend that the claims guidelines and manual are part of the record before the Court when it adjudicates Plaintiff's claim.

### 3.   Ensuring All Internal and External Communications Regarding Mr. Stallman's Claim are in the Record

Lastly, with respect to the completeness of the record, Plaintiff seeks discovery in the form of interrogatories, document requests, and a 30(b)(6) deposition topic on ensuring that First Unum has included all internal and external communications it sent or received regarding Mr. Stallman's claim, as well as any call recordings related to his claim, in the record.

Turning first to the call recordings, none have been included in the administrative record produced to date. To the extent such recordings exist, the Department of Labor's Employee Benefits Security Administration ("EBSA") has taken the position that they are relevant documents that are required to be produced pursuant to 29 C.F.R. § 2560.503-1. *See* EBSA Information Letter 06-14-2021, enclosed herewith as Exhibit D, *available at* https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/information-letters/06-14-2021. Plaintiff seeks confirmation that First Unum searched for and preserved any

---

[3] The "RSA" is the Regulatory Settlement Agreement appended to the Complaint as Exhibit B (ECF No. 1-3).

5

Hon. Leda Dunn Wettre
April 4, 2024

---

call recordings related to Mr. Stallman's claim. To the extent any such recordings exist, they need to be produced as part of the record. To the extent no recordings exist, Plaintiff is entitled to explore why that is the case and whether any spoliation of relevant evidence has occurred.

With respect to internal and external communications, First Unum and its related entities use various instant messaging platforms for written internal communications, as well as email. During the period applicable to Mr. Stallman's claim, Unum Group (First Unum's corporate parent) utilized Microsoft Teams messaging for internal communications. *See, e.g.,* Excerpted deposition testimony of Kurt Phillips, appended hereto as Exhibit E; Excerpted Deposition Testimony of Christopher Fairchild enclosed as Exhibit F. There are no Microsoft Teams messages contained in the administrative record. Plaintiff would like to confirm that none exist via interrogatory, document request, and a 30(b)(6) deposition topic.

With respect to email, First Unum and its sister entities do not automatically include all email communications in a claim file. *See* Exhibits E and F. Instead, they must be manually added to Navilink—First Unum's claims system—in order to be included in the file. Here too, although there are some emails related to Mr. Stallman's claim included in the file, Mr. Stallman seeks to ensure that a reasonable search for all such emails, which are relevant documents under the claims regulation, has occurred, that they have been preserved, and that they are included in the claim file. Plaintiff would like to confirm these facts via interrogatory, document request, and a 30(b)(6) deposition topic. To the extent that all relevant information has been preserved and included in the administrative record, there should be no issue. To the extent that they have not, Plaintiff is entitled to explore why that is the case and whether spoliation of relevant evidence has occurred.

First Unum is a fiduciary charged with acting in the best interests of participants and beneficiaries like Mr. Stallman (*see* 29 U.S.C. § 1104). Its refusal to permit discovery into the completeness of the record, the contents of which are to be judged by the Court, suggests that it is attempting to conceal relevant information that it possessed when it adjudicated Mr. Stallman's claim. It should not be permitted to do so. Rather, Plaintiff should be afforded the complete record and the right to confirm that the record is complete before the Court assesses whether First Unum complied with its obligations to provide Mr. Stallman with a full and fair review of his claim.

### B.   Conflict of Interest Discovery

As is noted above, Third Circuit precedent expressly permits Mr. Stallman to seek discovery into First Unum's financial conflict of interest as the adjudicator or payor of claims. *Noga*, 19 F. 4th at 273-74. "The necessity for this exception is obvious . . . To allow an administrator the benefit of a conflict merely because it managed to successfully keep that conflict hidden during the administrative process would be absurd." *Howley*, 625 F.3d at 794. "Despite its potential relevance, information regarding a structural conflict may be omitted from the administrative record due to the combination of information asymmetry and financial incentives:

Hon. Leda Dunn Wettre
April 4, 2024

---

the participant may not know of the conflict, and the fiduciary has no financial incentive to disclose it." *Noga*, 19 F. 4th at 273. Thus, "[t]o account for the potential omission of that evidence, as a limited exception to the ERISA record rule, the administrative record may be supplemented to prove or disprove a structural conflict of interest or its severity." *Id.* at 274.

Here, Mr. Stallman seeks limited discovery into First Unum's inherent conflict of interest as the adjudicator and payor of claims. Specifically, Mr. Stallman seeks discovery into the following:

a) Whether financial motives influenced Unum's approval of Mr. Stallman's claim under KBT's apparently self-funded plan for the maximum duration benefits were payable and its subsequent irreconcilable conclusion that he had not satisfied the concurrent LTD elimination period for benefits under its' fully insured LTD plan;

b) Information regarding how the claims personnel who adjudicated Mr. Stallman's claim are compensated and its impact on claim adjudication;

c) Information regarding how the medical personnel who adjudicated Mr. Stallman's claim are compensated and its impact on claim adjudication;

d) Copies of Unum's weekly, monthly, and quarterly Weekly Tracking Reports for all dates from the opening of Mr. Stallman's short-term disability claim through the denial of his claim for LTD benefits;

e) Additional information regarding Unum's tracking of recoveries, as well as the meaning of the terms "paid recover," "recovery pay possible," "advance pay and close";

f) Information regarding the recovery targets of the AVP's and Directors responsible for Stallman's claim; and

g) Performance reviews of the AVP, directors, DBS, Appeals specialists, and clinical personnel who handled Plaintiff's claim.

Each of these items is briefly addressed below.

First, the financial motivation to deny Mr. Stallman's insured LTD claim after approving his employer-funded STD claim is apparent. It made the claim cost First Unum's as opposed to that of a third party. Plaintiff seeks to explore, via interrogatories, document requests, and a 30(b)(6) deposition topic, whether First Unum considered the claim cost of approving Mr.

7

Hon. Leda Dunn Wettre
April 4, 2024

Stallman's high dollar value LTD claim ($14,500 per month) in making the decision to deny his claim. Naturally, First Unum has omitted any such evidence from the file for the reasons identified in *Noga* and *Howley*.

Next, with respect to the compensation Unum medical and claims personnel receive, there is a documented history of Unum Group personnel (who actually adjudicate claims for all Unum entities, including First Unum) being compensated based on claim denials and the overall financial performance of the company, which is affected by its claim cost. *See, e.g.,* Thomas, Philip W. (2021) "Fifteen Years Later - Did the Unum Group Improve Its ERISA Claims Handling Practices?," Mississippi College Law Review: Vol. 39: Iss. 2 , Article 1., *available at* https://dc.law.mc.edu/lawreview/vol39/iss2/1 at 203-32. As such, numerous courts have permitted discovery into this apparent financial conflict of interest. *See, e.g., Smith v. Unum Life Ins. Co. of Am.*, No. CV-21-01858-PHX-DGC, 2022 WL 1136639 (D. Ariz. Apr. 18, 2022); *Smith v. First Unum Life Ins*., No. 19 CIV. 00298 (NSR), 2020 WL 6281451 at *9-10 (S.D.N.Y. Oct. 21, 2020) (requiring disclosure of compensation information of First Unum decisionmakers); *Weinberg v. Unum Life Ins. Co. of Am.*, No. 17-cv-8976, 2018 WL 5801056 at *3 (S.D. N.Y. Nov. 6, 2018) (ordering Unum Life to produce information regarding the compensation provided to Unum's medical personnel); *Kamerer v. Unum Life Ins. Co. of Am.*, 251 F. Supp. 3d 349, 353 (D. Mass. 2017) (permitting deposition of medical consultant engaged by Unum to investigate bias); *Wittmann v. Unum Life Insurance Company of America*, No. 17-cv-9501, 2018 WL 1912163 at *3 (E.D. La. April 23, 2018) (requiring production of "compensation information for those attorneys and physicians, if any, who advised defendant on the administration of plaintiff's claim and must identify the individual(s) with the most comprehensive knowledge of that compensation information"). Plaintiff seeks comparable discovery here in the form of interrogatories, document requests, and a deposition of a 30(b)(6) witness competent to testify on such matters.

The remainder of the conflict discovery sought is directly relevant to First Unum's financial conflict of interest as it relates to financial targets Unum Group and First Unum set with respect to claims payments and the closure of claims. In a prior case, Unum Life admitted that it uses various "tracking reports" to keep track of financial performance resulting from claim closures. *See Mitchell v. Unum Life Ins. Co. of Am.,* No. 18-cv-94 ECF No. 125 (E.D. Tenn. Oct. 29, 2020) (attached as Exhibit G); deposition of Paul Peter in *Billack v. The Paul Revere Life Ins. Co.*, No. 16-cv-03631-DJH (D. Ariz. Dec. 7, 2018) *filed in* J*acob v. Unum Life Insurance Company of America et al*, No. 1:19-cv-00131 ECF No. 32-2 (E.D. Tenn. May 02, 2019). This evidence has been produced in numerous cases. *See, e.g., Sandeen v. The Paul Revere Life Ins. Co.,* No. 18-cv-248 ECF N. 92 (E.D. Tenn. Aug. 5, 2020) (attached as Exhibit H);[4] *Gray v. Unum Life Ins. Co. of Am.*, No. 17-cv-01778-JGB-KK, ECF No. 47 at PageID592-PageID593 (C.D. Cal. Sept. 21, 2018)

---

[4] This order was initially sealed, but the Court unsealed it at ECF No. 110.

Hon. Leda Dunn Wettre
April 4, 2024

---

(attached as Exhibit I). Here, Plaintiff seeks comparable conflict discovery pertinent to his claim and the individuals responsible for adjudicating it; namely, the tracking reports, and deposition testimony regarding the use of those reports.

### IV.     CONCLUSION

The foregoing briefly summarizes the discovery Plaintiff seeks in this matter. It is consistent with the law, and it is consistent with discovery First Unum and related entities have been required to produce in other ERISA cases throughout the country on deferential review. There is nothing unique about it. First Unum simply does not want to produce it. Thus, Plaintiff requests that he be permitted to serve the discovery referenced above. If the parties are unable to informally resolve this dispute at or before the parties' upcoming status conference on April 23, 2024, Plaintiff requests leave to file a formal motion seeking discovery, which will contain the discovery requests he seeks to propound appended thereto as well as additional exhibits in support of his position.

Mr. Stallman and I thank you for your attention to this matter and your efforts to resolve this issue without formal motions practice.

Respectfully submitted,

Adam H. Garner

Enclosures

cc:     All counsel of record (via CM/ECF)