UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY STALLMAN,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>FIRST UNUM LIFE INSURANCE COMPANY, KASOWITZ, BENSON & TORRES, LLP, and KASOWITZ, BENSON & TORRES, LLP LONG TERM DISABILITY PLAN,<br><br>　　　　　　Defendants. | Civ. No. 23-20975 (JXN) (LDW)<br><br>**MEMORANDUM OPINION AND ORDER** |

**LEDA DUNN WETTRE, United States Magistrate Judge**

Before the Court is plaintiff Jeremy Stallman's motion to compel discovery in this action in which he challenges defendants' denial of benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").  (ECF 18, 22).  Defendant First Unum Life Insurance Company ("First Unum") opposes the motion.  (ECF 21).  The Court decides this motion without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

　　　　　　　　　　　　　I.　　BACKGROUND

In this action pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), plaintiff seeks review of First Unum's denial of his claim for long-term disability benefits ("LTD").  The following allegations, drawn primarily from the Complaint, are not materially disputed.  (*See* Complaint, ECF 1).

Plaintiff worked as an attorney at defendant law firm Kasowitz Benson & Torres, LLP from 2011 to 2019.  (*Id.* ¶¶ 11, 21-22).  The firm sponsored an employee welfare benefit plan

("the Plan") as defined and governed by ERISA. (*Id*. ¶¶ 3, 5). Defendant First Unum issued a group insurance policy funding the Plan and providing benefits for disability. First Unum also was responsible for adjudicating claims under the Plan. (*Id*. ¶ 7). Accordingly, First Unum is a fiduciary for purposes of ERISA. (*Id*. ¶ 7).

The Plan provided for both short-term disability ("STD") and LTD. (Complaint, Exh. A, ECF 1-2). Stallman elected to participate in the Plan. (ECF 1 ¶ 12).

In September 2019, plaintiff took a leave of absence for a fractured pelvis pursuant to the Family and Medical Leave Act of 1993. (*Id.* ¶¶ 20-21). He sought and received the maximum STD benefits through the Plan in connection with this injury. (*Id*. ¶ 21; ECF 18-1 at 8).[1]

Although plaintiff was approved to return to work for the pelvic fracture on November 1, 2019, he instead filed for LTD benefits on January 9, 2020 for a new condition. (ECF 1 ¶ 31). He claimed disability due to a major depressive disorder and anxiety that developed after being informed he had a high risk of developing Amyotrophic Lateral Sclerosis. (*Id*. ¶¶ 22, 26-28, 30).

First Unum denied the LTD claim on October 7, 2020, on grounds that the submitted medical evidence did not support plaintiff's claim and that he was not covered under the policy as of November 1, 2019. (*Id*. ¶ 40). Stallman unsuccessfully appealed that decision to First Unum. First Unum's August 13, 2021 letter advising of the denial of the appeal informed plaintiff that he had exhausted the appeals process under the Plan and informed him of his right to sue under ERISA. (*Id*. ¶¶ 48-49). This action followed.

---

[1] Page citations are to ECF page numbers in the banner of the cited document.

## II. DISCUSSION

By way of the instant motion, plaintiff seeks to: (1) confirm that a complete administrative record has been produced by First Unum; (2) pursue a limited exception to the rule constraining discovery in ERISA actions by taking extra-record "conflict-of-interest" discovery; and (3) compel discovery regarding First Unum's affirmative defenses.

### A. Legal Standard Governing the Scope of Discovery

Pursuant to ERISA, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Where a plan confers discretionary authority on its administrator, the administrator's decision will be reviewed for abuse of discretion. *See id*. at 792. The parties agree that the latter standard applies to this motion because the Plan provides First Unum discretion both to construe the terms of the Plan and render benefits determinations. *See* Pl. Opening Brief, ECF 18-1 at 11 n.4; *see also Firestone Tire & Rubber Co.*, 489 U.S. at 115; *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 272 (3d Cir. 2021).

Under the applicable abuse-of-discretion standard, the Court's review of the administrator's decision is presumptively confined to the administrative record. *See Noga*, 19 F.4th at 271 ("Under the ERISA record rule, judicial review of an ERISA fiduciary's discretionary adverse benefit decision is confined to the information contained in the administrative record."). There are limited exceptions to this rule, as discussed below. With this standard in mind, the Court addresses plaintiff's demands for discovery.

### B. Administrative Record Discovery

Plaintiff first seeks discovery into the completeness of the administrative record produced by First Unum. Specifically, plaintiff seeks discovery into three areas in order to demonstrate that the administrative record provided by First Unum is incomplete. He seeks production of: (1) his STD claim file; (2) First Unum's claims manual and guidelines; and (3) various emails and instant messages related to his LTD claim. (ECF 18-1 at 15). First Unum opposes these requests, in part, by arguing that the requested discovery was not considered by the Plan administrator when reviewing the LTD claim and is thus outside the scope of judicial review. (ECF 21 at 19-20). First Unum agrees, however, to provide items (2) and (3) above, despite its position that plaintiff is not entitled to this discovery. (*See* ECF 18-1 at 18; ECF 21 at 20, 23). This moots the request for the claims manual and guidelines and partially moots the request for emails and other communications regarding plaintiff's claim (leaving open only plaintiff's request to take discovery as to whether all such materials have been produced).

Under the so-called "ERISA record rule," judicial review of an administrator's adverse decision is typically limited to the administrative record. *See Noga*, 19 F.4th at 271. "The administrative record consists of the materials before the fiduciary who makes the benefit decisions on internal review, and it typically contains relevant plan documents (such as an insurance policy), the claim file (the claim, supporting information supplied by the claimant, as well as information related to the claim that was considered, collected, or generated by the fiduciary), and the fiduciary's final determination with respect to the claim." *Id*. at 272. The Third Circuit's definition of the administrative record accords with 29 C.F.R. § 2560.503-1, which "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits."

4

29 C.F.R. § 2560.503-1. Those regulations provide that information is "relevant" to a claim if it:

(i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

(iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8). The Court reviews plaintiff's requests for discovery in light of these standards.

### i. The STD Claim File

Plaintiff contends that the STD file should be considered part of the administrative record on this appeal from denial of his separate claim for LTD benefits. He argues that the "STD claim file is plainly relevant to his LTD claim" because the STD file was "known to" First Unum when it adjudicated his LTD claim and thus should be produced as part of the "complete" administrative record. (ECF 18-1 at 16). Further, he asserts that the denial of LTD benefits is "irreconcilable" with First Unum's prior decision granting him STD benefits and is thus "relevant" and should be considered part of the administrative record. (*Id*. at 16-17). First Unum disputes both of plaintiff's premises, asserting that the "STD claim file was not considered or before the LTD claim administrator" and that "the STD claim file is separate and distinct from Plaintiff's LTD claim." (ECF 21 at 20-21).

5

The Court agrees with First Unum that the STD claim file is not part of the administrative record of the LTD claim at issue here and therefore denies plaintiff's request for its production. The administrative record is comprised of "only that evidence that was before the administrator when he or she made the decision being reviewed," *Shvartsman v. Johnson & Johnson*, 2012 U.S. Dist. Lexis 80328, at *10 (D.N.J. June 11, 2012), and here that decision was the LTD decision – not the prior STD determination. Further, nothing in the record suggests that the STD file as a whole was "relied upon" or "submitted, considered, or generated in the course of making the benefit determination" at issue here, the LTD determination. 29 C.F.R. § 2560.503-1(m)(8). Given that the respective claims were based on wholly unrelated disabilities – a pelvic fracture (STD) and depression and anxiety (LTD) – that is unsurprising. To that end, as First Unum explains, the STD and LTD claims are separate and distinct files, which militates against finding that the STD file is relevant as defined by ERISA regulations. (ECF 21 at 21). While plaintiff cites out-of-Circuit decisions that take a more expansive view of considering materials outside of the administrative record if they were accessible to the administrator, *see e.g.*, *Helton v. AT&T Inc.*, 709 F.3d 343 (4th Cir. 2013); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623 (9th Cir. 2009); *Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456 (7th Cir. 2001); *Suson v. The PNC Financial Services Grp., et al.,* 15-CV-10817 (N.D. Ill. Nov. 28, 2016) (ECF 14-3), this Court does not read the Third Circuit's pertinent decisions as defining the scope of materials subject to review so broadly. *See Noga*, 19 F.4th at 271-74; *Miller v. Am. Airlines, Inc.*, 632 F.3d 837 (3d. Cir. 2011). Moreover, plaintiff's reliance on *Kaminski v. UNUM Life Ins. Co. of Am.*, 517 F. Supp. 3d 825, 859 (D. Minn. 2021) is misplaced, as that was a decision subject to *de novo* review and not the far more restrictive abuse-of-discretion standard applicable here. The Court therefore

6

rejects plaintiff's argument that the STD file is a *de facto* part of the administrative record because plaintiff views it as a "relevant" document.[2]

Finally, to the extent that any portion of the STD file was used in determining plaintiff's LTD claim, First Unum indicates that such information was already produced as part of the administrative record. (ECF 21 at 20). That plaintiff received STD benefits from First Unum, which is noted as background in several places in the administrative record (*see* Exhibit E, ECF 18-7 at 3-16), does not demonstrate or even imply that the STD claim file as a whole was relied upon or considered as part of the LTD decision – or that the LTD claims administrator ever reviewed it. *See Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) ("[T]he 'whole' record consists of that evidence that was before the administrator when he made the decision being reviewed."), *abrogated on other grounds by Cottillion v. United Refining Co.*, 781 F.3d 47 (3d Cir. 2015); *Noga*, 19 F.4th at 271. Plaintiff fails to point to anything determinative in the administrative record produced by First Unum that would indicate the STD file was considered by the LTD claim administrator; instead, the administrative record only acknowledges its existence, which is insufficient to render it part of administrative record. *See Mitchell*, 113 F.3d at 440; *see also Noga*, 19 F.4th at 274 (explaining that both plan participant and fiduciary have incentives to develop administrative record in favor of their respective positions). Plaintiff's

---

[2] Plaintiff further argues that defendant's STD and LTD claims are "seemingly irreconcilable," and that plaintiff thus should be allowed to probe the STD claim file in discovery to understand the later denial of LTD benefits. However, this is not an argument that bears on whether the STD claim file forms part of the administrative record considered by the Plan administrator in making the challenged LTD determination. To the extent the argument is that the purported inconsistency of the STD and LTD determinations constitutes a procedural irregularity demonstrating that First Unum's structural conflict impacted the adverse benefits determination at issue, the Court addresses that argument below.

request for the STD claim file is therefore denied.

      *ii.    Internal and External Communications Regarding the Claim*

Plaintiff further seeks by way of the full array of discovery devices – interrogatories, document requests, and a 30(b)(6) deposition – to ensure that all of First Unum's internal and external communications regarding his LTD claim have been included in the administrative record. (ECF 18-1 at 19; ECF 18-3 at 6, Interrogatory No. 4, ECF 18-4 at 3, Request Nos. 4, 6-7, and ECF 18-5). There is no dispute that communications regarding Stallman's LTD claim are considered part of the administrative record. (ECF 21 at 23). He contends, however, that First Unum's process of collecting and producing communications is manual and, as such, there is no way for him to verify that all appropriate materials have been included in the record. He thus seeks, through plenary discovery, to verify that First Unum has conducted a reasonable search for relevant communications, that such communications have been appropriately preserved, and that no spoliation has occurred. (ECF 18-1 at 19). First Unum represents that it has already completed a search for responsive communications and has already produced or will be producing them. (ECF 21 at 23).

Plaintiff cites to nothing to suggest that after First Unum produces two additional newly located emails, anything is missing from the administrative record – nor does he point to any case law holding that extra-record discovery is appropriate merely to confirm that the record is complete as to internal and external communications. If plaintiff's motion had demonstrated existing gaps in the administrative record, such discovery might have been permissible. Here, however, it was First Unum that alerted plaintiff to missing communications (ECF 18-1 at 19; ECF 21 at 23), and plaintiff points to no further irregularities in the record justifying the broad discovery he seeks.

*See Verme-Gibboney v. Hartford Ins. Co.*, 11-CV-3796 (RMB)(JS), 2013 WL 6633084, at *4 (D.N.J. Dec. 16, 2013) ("Although plaintiff says she wants to fill in the gaps, she does not cite to any deficiency that she wants to address.").[3] The Court is unpersuaded to deviate from the ERISA record rule to permit the requested "confirmatory" discovery plaintiff seeks here. *See Goble v. Liberty Life Assur. Co. of Bos.,* 12-CV-6030 (PGS), 2013 WL 5603871, at *9 (D.N.J. Oct. 11, 2013) (finding extra-record discovery inappropriate when "Plaintiff has not shown that Defendants have selectively omitted information and produced an incomplete administrative record"). Plaintiff's request is accordingly denied.

### C. Conflict of Interest Discovery

Plaintiff additionally seeks conflict-of-interest discovery because First Unum is admittedly subject to a structural conflict of interest as both the adjudicator and payor of his claims. (*See* ECF 18-1 at 20-21; ECF 21 at 15); *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). While the existence of a structural conflict of interest does not alter the standard of review, courts may consider conflict-of-interest evidence as a factor, among others, in determining whether a plan administrator abused its discretion. *See Howley*, 625 F.3d at 793.

As noted previously, judicial review of an administrator's adverse decision is typically limited to the administrative record. *See Noga*, 19 F.4th at 271. Conflict-of-interest discovery, however, may be a limited exception to this general rule in appropriate circumstances. This is

---

[3] Plaintiff initially argued that a telephone call recording might be missing from the administrative record based on First Unum's pre-motion letter. (ECF 18-1 at 18; ECF 16 at 6). In its opposition, however, First Unum explained that the call at issue did not concern plaintiff's LTD claim and was thus outside the administrative record. (ECF 21 at 24). On reply, plaintiff did not challenge this assertion. (ECF 22 at 9). The Court therefore finds no basis to allow discovery into the recording's absence from the administrative record.

because the "administrative record focuses on a specific benefit claim, and for that reason, the record may lack information about a fiduciary's 'potential biases and conflicts of interest.'" *Id*. at 273 (quoting *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004)). The exception is a narrow one and only "permits supplementation of the administrative record [with] information that tends to prove or disprove a structural conflict of interest or its severity." *Id.* at 275. Thus, conflict-of-interest discovery, when permitted, may probe "the extent of [a fiduciary's] conflict of interest and by inference, the effect of that conflict on its decision-making process." *Howley*, 625 F.3d at 794.

The parties dispute the appropriate standard for obtaining conflict-of-interest discovery. Plaintiff asserts that after the Third Circuit's decisions in *Howley* and *Noga*, conflict-of-interest discovery is permissible automatically, as a matter of law, when a fiduciary has a structural conflict of interest. (ECF 22 at 11 (citing *Noga*, 19 F.4th at 273-74; *Howley*, 625 F.3d at 794)). First Unum, on the other hand, relies on a series of rulings from this Court requiring a plaintiff first to demonstrate a reasonable suspicion of procedural irregularities or misconduct before being permitted to conduct extra-record conflict-of-interest discovery. (ECF 21 at 17 (citing, *inter alia*, *Hocheiser v. Liberty Mut. Ins. Co.,* 17-CV-6096 (FLW)(DEA), 2018 WL 6026818, at *4 (D.N.J. Nov. 16, 2018))).

The Court agrees with First Unum that a structural conflict does not entitle a plaintiff automatically to conflict-of-interest discovery, but rather a plaintiff must first demonstrate something more to justify it. Other decisions of this Court have described the requisite standard as evidence sufficient to create a "reasonable suspicion" that a structural conflict became an actual conflict that affected the claims decision at issue. The parties cite no in-Circuit authority – and

10

the Court has found none – to support plaintiff's position that extra-record discovery is automatically permitted as a matter of course upon a bare showing of a fiduciary's structural conflict of interest, such as the one admittedly present here. Instead, this Court has required a plaintiff first to demonstrate a reasonable suspicion of misconduct by the fiduciary before permitting extra-record discovery. *See L.P. v. Crunchy Data Sols.*, Inc., No. 22-CV-2004 (RK), 2023 WL 4457888, at *5 (D.N.J. July 11, 2023) ("[A] plaintiff must establish a good faith basis for alleging bias, conflict of interest, or irregularity in the [d]efendant's decision-making process by demonstrating that the administrative record raises a reasonable suspicion of [[d]efendant's] misconduct.") (internal quotations and citations omitted)); *Brainbuilders, LLC v. Ocean Healthcare Mgmt. Grp. Benefit Plan*, 20-CV-2495 (MAS), 2021 WL 949321, at *6 (D.N.J. Mar. 12, 2021) (finding that plaintiff must establish reasonable suspicion of misconduct to conduct extra-record discovery); *Verme-Gibboney*, 2013 WL 6633084, at *4 (D.N.J. Dec. 16, 2013) ("Before plaintiff can conduct the discovery she requests she 'must establish a reasonable suspicion of misconduct.'") (internal citation omitted); *Irgon v. Lincoln Nat. Life Ins. Co.* 13-CV-4731 (FLW), 2013 WL 6054809, at *6 (D.N.J. Nov. 15, 2013) ("In order to permit Plaintiff additional discovery based on that conflict, Plaintiff must identify a reasonable suspicion that the conflict of interest somehow impacted Defendant's final decision of denial."). Even when courts have not expressly articulated this "reasonable suspicion" standard, they have required some basis beyond the mere existence of a structural conflict to permit extra-record discovery. *See Hocheiser*, 2018 WL 6026818, at *4 (D.N.J. Nov. 16, 2018) ("[A]bsent more, the singular fact that Liberty administers and pays claims is not by itself enough to open the door to discovery of extra-record materials."); *U.S. Renal Care, Inc. v. Health*, 14-CV-2257, 2016 WL 1162268, at *5

11

(M.D. Pa. Mar. 24, 2016) ("Such a structural conflict alone, however, does not warrant the allowance of discovery outside the administrative record."). There are policy reasons for this restriction. "In the ERISA context, the usual broad scope of discovery is limited by the statute's goal of a speedy, efficient resolution of claims," which counsels against providing conflict-of-interest discovery absent a particularized demonstration that such discovery is warranted. *O'Conner v. PNC Fin. Servs. Grp., Inc.*, 15-CV-5051, 2016 WL 2941196, at *3 (E.D. Pa. May 20, 2016); *see also Taylor v. Sheet Metal Workers' Nat'l Pension Fund*, 24-CV-4321 (CPO)(EAP), 2024 WL 4471683, at *4 (D.N.J. Oct. 11, 2024) ("[R]estricted review achieves congressional intent by encouraging parties to resolve benefit claims internally, thereby avoiding the costs of litigation."). The Court therefore concludes that the appropriate standard by which to determine if structural conflict-of-interest discovery is to be permitted is whether or not plaintiff has demonstrated a reasonable suspicion of misconduct. Accordingly, the Court will review plaintiff's request for conflict-of-interest discovery under this standard.

Plaintiff advances three arguments in his attempt to establish a reasonable suspicion of misconduct, none of which alone is especially persuasive. First, plaintiff asserts that First Unum's "longstanding history of misconduct," particularly its "unfair claim settlement practices" that resulted in a 2004 Regulatory Settlement Agreement ("RSA") with the United States Department of Labor and various States (*See* Complaint, Exh. B, ECF 1-3), is evidence of its current or ongoing misconduct. (ECF 22 at 14). Second, plaintiff posits that First Unum's general use of "tracking reports" to monitor claim closures and their related financial impact is evidence that the adjudication of plaintiff's claim was impacted by the structural conflict. (ECF 18-1 at 24; ECF 22 at 4-15). Third, plaintiff submits that First Unum's granting plaintiff STD benefits but denying

LTD benefits is "suspicious" and thus evidence of potential misconduct. (ECF 22 at 16). The Court will analyze each argument in turn.

At the outset, the Court notes its agreement with plaintiff's assertion that he is "not required to prove misconduct at this stage" under the reasonable suspicion standard. (ECF 22 at 16). Nonetheless, the Court finds that plaintiff has failed to demonstrate a reasonable suspicion of misconduct sufficient to warrant significant extra-record conflict-of-interest discovery.

As to plaintiff's first argument, the Court is not convinced that First Unum's entry into the RSA some twenty years ago creates a reasonable suspicion that the challenged claims decision here was affected by a conflict of interest. While First Unum did enter into the RSA in 2004, plaintiff cites no recent authority indicating that the RSA is relevant to demonstrating a reasonable suspicion of misconduct; indeed, the most recent case that plaintiff provides is from 2012, far closer in time to First Unum's entry into the RSA. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 934 (9th Cir. 2012). Moreover, plaintiff fails to point to any nexus between First Unum's historical misconduct and any suspected misconduct pertaining to his case. That the RSA is still in effect does not *per se* create a reasonable suspicion of an actual conflict that impacted the claims decision at issue. *See L.P.*, 2023 WL 4457888, at *5 (D.N.J. July 11, 2023); *Verme-Gibboney*, 2013 WL 6633084, at *4 ("Simply because plaintiff raises the specter of a conflict of interest does not give her the right to conduct 'carte blanche' conflict of interest discovery beyond the administrative record."); *Smith v. First Unum Life Ins.*, 19-CV-298 (NSR), 2020 WL 6281451, at *6 (S.D.N.Y. Oct. 21, 2020) ("Without a showing of a nexus between Unum's historical misconduct (circa 2004) and the determination at issue in this case (in 2018)—*e.g.*, a factual basis to conclude that the Unum Decision Makers were influenced two decades ago to persist in

13

engaging in biased claim denials—allegations regarding Unum's historical misconduct are insufficient to justify discovery beyond the administrative record.").

Considering plaintiff's second argument, the bare fact First Unum admitted to the use of weekly tracking reports and other tracking measures is insufficient on its own to raise a reasonable suspicion of misconduct. Here, too, plaintiff relies on a general practice, which he admits "could be innocuous." (ECF 22 at 15). Plaintiff does not offer even a modicum of evidence from the administrative record to support his speculation that the tracking reports impacted his claim determination. Furthermore, First Unum submitted a sworn affidavit indicating that "[t]he evaluation and compensation of Benefit Center claims personnel, including the Benefit Specialist, Director and Assistant Vice President… as well as the appeals personnel, are not dependent on the outcome of any claim determination, or on how many claims are paid, denied or terminated. There are also no claim closure quotas." (ECF 16-1 at 5). The affidavit further provides that the weekly tracking reports were never considered by the claims administrator who denied plaintiff's claim and, in fact, indicates that the administrator does not even have access to such reports. (*Id*. at 5). This refutes plaintiff's supposition that such reports may be shared with claims personnel, biasing their claim determinations. The Court, however, does acknowledge plaintiff's point that the weight to be placed on a unilaterally prepared declaration that has not been subject to the adversarial process is somewhat diminished.

Plaintiff's third argument for obtaining discovery is based on the purportedly "inconsistent positions between the handling of Mr. Stallman's STD and LTD claims," which he contends must be due to First Unum's structural conflict. (ECF 22 at 16). This is an allegation of a procedural irregularity in the claims process, in which the focus is on "the way in which the administrator

14

arrives at its decision, such as an unexplained reversal of position, bias, self-serving selectivity in the use and interpretation of expert reports, or a pattern of inconsistent benefit decisions." *Taylor*, 2024 WL 4471683, at *5 (D.N.J. Oct. 11, 2024) (citations and internal quotations omitted). Plaintiff's contentions of procedural irregularity are superficial. Although he asserts inconsistency between the STD and LTD decisions, he does not acknowledge that plaintiff relied on different alleged disabilities in seeking STD and LTD, nor does he state whether the standards for determining eligibility and disability under each of those policies differed. Moreover, his assertions of procedural irregularity are not akin to those in the authority on which he relies. *Cf. Miller*, 632 F.3d at 837 (finding abuse of discretion after claim administrator reversed prior grant of benefits without new medical information to support reversal); *Kaminski*, 517 F. Supp. 3d at 825 (reversing denial of LTD under *de novo* review when underlying medical records were "nearly identical" to those relied upon for previous award of STD).

Considering the foregoing, the Court views plaintiff's showing of "reasonable suspicion" as minimal. It certainly does not justify the wide-ranging discovery plaintiff seeks into First Unum's claims practices. But although barely to the line of reasonable suspicion, the Court, in an abundance of caution and balancing the parties' interests, finds appropriate to allow plaintiff to serve one interrogatory addressed to whether the compensation or performance evaluations of First Unum's claims and medical personnel involved in plaintiff's LTD claim decision has been based, during relevant time periods, in any respect on the outcome of their claims determinations. In the Court's view, this is the information that most directly bears on whether any bias stemming from the structural conflict actually may have influenced the outcome of the LTD claim. Although the Court would have been well within its discretion to deny the request for discovery altogether for

the reasons set forth above, it will allow plaintiff this narrow discovery, which is commensurate with his *de minimis* showing under the reasonable suspicion standard. To this extent, plaintiff's request for discovery is permitted.

### D. Affirmative Defenses Discovery

Finally, plaintiff further moves to compel discovery into First Unum's affirmative defenses. (ECF 18-1 at 25-26). First Unum opposes plaintiff's application, arguing that discovery, if permitted at all in ERISA cases reviewed for abuse of discretion, is necessarily limited to a fiduciary's structural conflict of interest. (ECF 21 at 32).

Plaintiff's primary support for his request is *Dwyer v. Unum Life Ins. Co. of Am.*, an ERISA case in which the plaintiff was granted discovery pertaining to the defendant's affirmative defenses. *See* 470 F. Supp. 3d 434, 440 (E.D. Pa. 2020) ("[The affirmative defenses that Unum plans to assert… is an entirely proper subject of inquiry."). *Dwyer*, however, was decided under a *de novo* standard of review, *see* 470 F. Supp. 3d at 437, whereas the instant case is reviewed for abuse of discretion and consequently has a much more restrictive standard for obtaining discovery. *See, e.g.*, *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 418 (3d Cir. 2011). Even more significantly, plaintiff's request for discovery into First Unum's affirmative defenses constitutes merits discovery that is prohibited in abuse-of-discretion cases. *See Irgon*, 2013 WL 6054809, at *3 (D.N.J. Nov. 15, 2013); *Dandridge v. Raytheon Co.*, 08-CV-4793 (WJM), 2010 WL 376598, at *3 (D.N.J. Jan. 26, 2010) ("[T]o the extent Plaintiff seeks discovery into the merits of the Defendants' claim determination, it is clear that such discovery is prohibited."). Therefore, in keeping with the ERISA record rule governing cases reviewed for an abuse of discretion, the Court denies his request to compel discovery as to First Unum's affirmative defenses.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in part and denied in part. Plaintiff shall serve his interrogatory on or before December 31, 2024, and First Unum shall have until January 31, 2025 to respond. There shall be a telephonic status conference before the undersigned on **February 11, 2025 at 3:30 p.m.** Dial-in information for the conference is (973) 437-5535, access code 849047131#. The Clerk of the Court is directed to terminate the motion at ECF 18.

It is **SO ORDERED**.

Dated December 5, 2024

                                         *s/ Leda Dunn Wettre*
                                         Hon. Leda Dunn Wettre
                                         United States Magistrate Judge

Orig:  Clerk
cc:     Hon. Julien Xavier Neals, U.S.D.J.
        Counsel of Record