# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY STALLMAN,<br><br>     Plaintiff,<br><br>v.<br><br>FIRST UNUM LIFE INSURANCE COMPANY, KASOWITZ, BENSON & TORRES, LLP AND KASOWITZ, BENSON & TORRES, LLP LONG TERM DISABILITY PLAN,<br><br>     Defendant. | Civil Action No.:  2:23-cv-20975 |

## DEFENDANT FIRST UNUM LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE'S ORDER REGARDING DISCOVERY

**WHITE AND WILLIAMS LLP**
One Gateway Center, Suite 910
Newark, New Jersey 07102-4200
Phone Number: (201) 368-7200
Attorneys for Defendant,
*First Unum Life Insurance Company*

*On the Brief:*
Robert T. Pindulic, Esq.
Mariam A. Hashmi, Esq.

34408456v.1

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ..............................................................................1

    A.    Plaintiff's Claims for Disability Benefits ..............................................1

    B.    The Long-Term Disability Plan .........................................................3

LEGAL ARGUMENT .......................................................................................5

    A.    Standard of Review on Appeal ..........................................................5

    B.    Legal Standard Governing Scope of ERISA Discovery .........................6

    C.    The Magistrate Judge Properly Determined That Plaintiff is Not Entitled to Extra-Record Discovery Regarding The Completeness Of The Administrative Record Under Third Circuit Law ....................................8

        1.    The STD Claim File Is Not Part of the Administrative Record.............10

    D.    The Magistrate Judge Properly Determined that Plaintiff Did Not Demonstrate A Reasonable Suspicion Of Misconduct To Warrant Conflict Of Interest Discovery ......................................................................13

    E.    Plaintiff's Submission of New Evidence on Appeal is Improper and Should Be Rejected........................................................................21

    F.    Even if the Clear Error Standard is Applicable, Plaintiff Has Failed to Meet His Burden To Overturn Judge Wettre's Decision.......................23

CONCLUSION..............................................................................................24

## TABLE OF AUTHORITIES

Page(s)

CASES

*Ain v. Unun Life Ins. Co. of America*,
  2009 WL 5126536 (D. Col. 2009) .......................................................................16

*Andrews v. Goodyear Tire & Rubber Co., Inc.*,
  191 F.R.D. 59 (D.N.J. 2000) ..........................................................................5, 24

*Cagle v. Unum Life Ins. Co. of America*,
  2009 WL 995544 (E.D. Mo. 2009) .....................................................................16

*Cardona v. Gen. Motors Corp.*,
  942 F. Supp. 968 (D.N.J. 1996) .....................................................................5, 23

*Conkright v. Frommert*,
  130 S.Ct. 1640 (2010) ........................................................................................19

*Dandridge v. Raytheon Co.*,
  2010 U.S. Dist. LEXIS 5854 (D.N.J. Jan. 26, 2010) ...........................................7

*Daniel v. UnumProvident Corp.*,
  2010 U.S. Dist. LEXIS 115171 (E.D.N.Y. 2010) ...............................................16

*Delso v. Trustees of Ret. Plan for Hourly Employees of Merck & Co., Inc.*,
  2006 U.S. Dist. LEXIS 76369 (D.N.J. Oct. 20, 2006) .....................................7, 19

*Denmark v. Liberty Life Assur. Co. of Boston*,
  566 F.3d 1 (1st Cir. 2009) ..................................................................................14

*Doe v. Hartford Life & Accident Ins. Co.*,
  237 F.R.D. 545 (D.N.J. 2006) ........................................................................5, 23

*Dolfi v. Disability Reinsurance Mgmt. Servs., Inc.*,
  584 F.Supp.2d 709 (M.D. Pa. 2008) ...................................................................15

*Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*,
  131 F.R.D. 63 (D.N.J. 1990) ................................................................................5

*Doroshow v. Hartford Life and Acc. Ins. Co.*,
  574 F.3d 230 (3d Cir. 2009) .................................................................................7

*Estate of Kevin Schwing v. Lilly Health Plan*,
  562 F.3d 522 (3d Cir. 2009) .................................................................................4

*Evans v. Employee Benefit Plan*,
   2006 U.S. Dist. LEXIS 95782 (D.N.J. Jun. 6, 2006) ............................................................8

*Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*,
   174 F.R.D. 572 (D.N.J. 1997) ...........................................................................................6

*Firestone Tire & Rubber Co. v. Bruch*,
   489, U.S. 101, 115 (1989) ................................................................................................4

*Haines v. Liggett Grp., Inc.*,
   975 F.2d 81 (3d Cir. 1992) ..............................................................................................22

*Hays v. Provident Life & Accident. Ins. Co.*,
   623 F. Supp. 2d 840 (E.D. Ky. 2008) ..............................................................................19

*Hilbert v. Lincoln Nat'l Life Ins. Co.*,
   2016 U.S. Dist. LEXIS 22251 (M.D. Pa. Feb. 24, 2016) ...................................................4

*Hocheiser v. Liberty Mut. Ins. Co.*,
   2018 U.S. Dist. LEXIS 195749 (D.N.J. Nov 13, 2018) ...............................................13, 24

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
   213 F. 3d 124 (3d Cir. 2000) .............................................................................................6

*Irgon v. Lincoln Nat'l Life Ins. Co.*,
   2013 U.S. Dist. LEXIS 162703 (D. N.J. Nov. 15, 2013) ..............................13, 14, 19, 21, 23

*Johnson v. UMWA Health & Ret. Funds*,
   125 Fed. Appx. 400 (3d Cir. 2005) .....................................................................................7

*Jue v. Unum Group*,
   2021 U.S. Dist. LEXIS 23774 (N.D. Ca. Feb 8, 2021) ......................................................18

*Kamerer v. Unum Life Insurance Company of America*,
   251 F.Supp.3d 349 (D. Mass. 2017) ................................................................................16

*Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees*,
   970 F.2d 1165 (3d Cir. 1992) ..........................................................................................15

*Kounelis v. Sherrer*,
   529 F. Supp. 2d 503 (D.N.J. 2008) ....................................................................................6

*Kresefsky v. Panasonic Commc'ns and Sys. Co.*,
   169 F.R.D. 54 (D.N.J. 1996) .............................................................................................6

*Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976) ..............................................................................................6

*Mainieri v. Board of Trs. Of Operating Eng'r's Local 825 Pension Fund*,
2008 U.S. Dist. LEXIS 71247 (D.N.J. Sept. 10, 2008) ......................................................8, 21

*Marks v. Struble*,
347 F. Supp. 2d 136 (D.N.J. 2004) ...................................................................................5

*Mercado v. First Unum Life Ins. Co.*,
2013 U.S. Dist. LEXIS 34275 ...........................................................................................16

*Mercer v. Unum Life Insurance Co. of America, et al.*,
Civ. No. 3:22-cv-337 (M.D. Tenn. Jan. 3, 2025)...............................................................17

*Metro. Life Ins. Co. v. Glenn*,
554 U.S. 105 (2008)...............................................................................7, 8, 13, 14, 15

*Miller v. Am. Airlines, Inc.*,
632 F.3d 837 (2d Cir. 2011)...............................................................................................20

*Mitchell v. Eastman Kodak Co.*,
113 F.3d 433 (3d Cir. 1997)...........................................................................................7, 10

*Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*,
2021 U.S. Dist. LEXIS 47238 (D.N.J. March 10, 2021) .......................................................22

*Nespole v. First Unum Life Ins. Co.*,
Civ. No. 2:19-cv-08756 (D.N.J. Feb. 4, 2021) .............................................................14, 20

*Nespole v. First Unum Life Ins. Co.*,
Civ. No. 2-19-cv-08756 (D.N.J. Feb 4, 2021) ...................................................................21

*Noga v. Fulton Fin. Corp. Emple. Benefit Plan*,
19 F.4th 264 (3d Cir. 2021) ...............................................................................................9

*O'Sullivan v. Metro Life Ins. Co.*,
114 F. Supp. 2d 303 (D.N.J. 2000) .....................................................................................7

*Post v. Hartford Ins. Co.*,
501 F.3d 154 (3d Cir. 2007)...............................................................................................14

*Pub. Interest Research Grp. v. Hercules, Inc.*,
830 F.Supp. 1525 (D.N.J. 1993), *aff'd on other grounds and rev'd on other
grounds*, 50 F.3d 1239 (3d Cir. 1995) ...............................................................................6

*Shvartsman v. Johnson & Johnson*,
2012 U.S. Dist. LEXIS 80328 (D.N.J. June 11, 2012) .....................................................4, 10

*St. Onge v. Unum Life Ins. Co. of Am.*,
559 Fed. Appx. 28 (2d Cir. 2014).......................................................................................16

*Toth v. Alice Pearl, Inc.*,
   158 F.R.D. 47 (D.N.J.1994) ...................................................................................5

*Truitt v. Unum Life Ins. Co. of Am.*,
   729 F.3d 497 ..........................................................................................................16

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) ...............................................................................................5

*Warner v. Unum Life Ins. Co.*,
   2013 U.S. Dist. LEXIS 105067 (N.D. Ill. July 26, 2013) .....................................14

*Wittmann v. Unum Life Ins. Co. of Am.*,
   793 F. App'x 281 (5th Cir. 2019) ..........................................................................16

## OTHER AUTHORITIES

29 C.F.R. § 2560.503-1(m)(8) ...................................................................................9

Civ. R. 72.1(c)(1)(A) ................................................................................................5

Fed. R. Civ. P. 26(b) .................................................................................................8

Fed. R. Civ. P. 72 ......................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff's appeal of Magistrate Judge Leda Dunn Wettre's December 4, 2024 Memorandum Opinion and Order (ECF No. 23) is entirely unfounded and fails to establish any legal or factual error warranting reversal. Plaintiff also does not and cannot demonstrate that Judge Wettre's well-reasoned decision constitutes an abuse of discretion in this non-dispositive discovery dispute. Under Federal Rule of Civil Procedure 72, Local Civil Rule for the District of New Jersey 72, and relevant caselaw in this Circuit, Plaintiff bears the heavy burden of showing that Judge Wettre's decision constitutes an abuse of discretion. Plaintiff's appeal falls short of this standard. Additionally, Plaintiff fails to demonstrate that Judge Wettre's findings are erroneous or contrary to law.

Magistrate Judge Leda Dunn Wettre correctly determined that Mr. Stallman's short-term disability ("STD") claim is not part of the administrative record for his long-term disability claim ("LTD") and properly limited discovery in this ERISA enforcement action, regarding the completeness of the administrative record and the structural conflict of interest by First Unum. Plaintiff's arguments mistake the applicable legal principles and disregard the sound reasoning underlying Judge Wettre's decision. There is no basis for overturning her ruling, and Plaintiff's appeal amounts to nothing more than a baseless attempt to relitigate a discovery issue which was properly resolved. Accordingly, this Court should reject Plaintiff's appeal and affirm Magistrate Judge Wettre's decision in its entirety.

## FACTUAL BACKGROUND

### A.    Plaintiff's Claims for Disability Benefits

Plaintiff, Jeremy Stallman, is a former attorney at Defendant Kasowitz Benson & Torres, LLP (KBT). (Complaint at ¶ 11, ECF No. 1). Plaintiff took a leave of absence from work on September 16, 2019 due to non-disability reasons. Exhibit 1 to Defendant's Opposition to

Plaintiff's Motion to Confirm Discovery Rights (ECF 21-1) at PageID: 475. His last day worked was September 16, 2019. *Id.* While on leave of absence from work, Plaintiff suffered a pelvic fracture on September 27, 2019. *Id.* Plaintiff applied for short term-disability benefits due to the pelvic fracture. Plaintiff's treating orthopedic released Plaintiff to return to work on a full-time basis as of November 1, 2019, with no restrictions or limitations. *Id.* The elimination period under the Long-Term Disability Plan was 180-days, which Plaintiff failed to satisfy as he was cleared to return to work on November 1, 2019. Therefore, no long-term disability benefits were payable due to the fractured pelvis.

Plaintiff filed a subsequent disability claim indicating that he is unable to work as of January 3, 2020 due to major depressive disorder. Exhibit 1 to Defendant's Opposition to Plaintiff's Motion to Confirm Discovery Rights (ECF 21-2) at PageID: 481-484. Notably, Plaintiff confirmed that no physician kept him out of work between his recovery from a broken pelvis on November 1, 2019 and January 3, 2020. Defendant's Exhibit 1 (ECF 21-1) at PageID: 475. First Unum thoroughly reviewed and evaluated Plaintiff's claim for benefits due to depression and ultimately determined that Plaintiff was not entitled to benefits under the Plan. (*Id.* at PageID: 475-476). First Unum upheld its claim decision following Plaintiff's administrative appeal. Exhibit 3 to Defendant's Opposition to Plaintiff's Motion to Confirm Discovery Rights (ECF 21-3 at PageID: 485-493). Additionally, First Unum determined that based on Plan provisions related to leave of absence from work, Plaintiff's coverage under the Plan ended on October 31, 2019. Thus, at the time Plaintiff filed his claim for disability benefits based on depression in January 2020, he was no longer covered under the LTD Plan.( ECF 21-1 at PageID: 476, ECF 21-3 at PageID: 491).

Plaintiff argues that his disability is one continuing disability claim, rather than two separate claims – which they are. Plaintiff's assertion is factually incorrect and not supported by

the record. Although Plaintiff saw a treatment provider for depression in October 2019, on November 26, 2019, Plaintiff confirmed in a telephone call with First Unum that he was released to return to work around November 1, 2019 and "can perform all duties of his occupation at this time." Exhibit 7 to Plaintiff's Motion to Confirm Discovery Rights (ECF 18-7) at PageID: 396.

```
Per 11/26/19 STD TPC w/EE, EE reports he was released to RTW around 11/1/19 and can
perform all duties  of his occupation  at this time.
                    EE stated he was on vacation in CA when accident occurred and then was
stranded in CA while recovering                                        .
11/26/19 email from ER states they were under impression EE was unable to RTW yet
and so he had not RTW to date. 125/19 email from ER reflects EE has not RTW but
this is unrelated to his injury from 9/2019 and that he is now on FMLA for a
different condition and it is unknown when he will RTW.
```

Accordingly, by Plaintiff's own admissions, as of November 1, 2019, he was not disabled from his occupation due to either his pelvic fracture or depression. It was not until January 2020 -more than two months after his recovery from the pelvic fracture – that Plaintiff filed a disability claim based on depression, further undermining his assertion of a continuous disability. (ECF 21-2 at PageID: 481-484).

Following First Unum's appeal decision of August 13, 2021, Plaintiff submitted two additional correspondences in which he argued that the Plan was not lapsed as of November 1, 2019, and that he suffered from a recurrent disability. Exhibit 4 to Defendant's Opposition to Plaintiff's Motion to Confirm Discovery Rights (ECF 21-4 PageID: 494-502). On March 23, 2022, First Unum forwarded correspondence to Plaintiff's counsel rejecting the recurrent disability argument and upholding the denial of benefits. Exhibit 5, to Defendant's Opposition to Plaintiff's Motion to Confirm Discovery Rights (ECF 21-5) PageID: 503-507.

### B.    The Long-Term Disability Plan

The unambiguous terms of the subject LTD Plan vests the plan administrator with discretionary authority to interpret the terms of the Plan and render benefit determinations. Exhibit A to Compl. (ECF 1-2 at PageID: 36). Therefore, the plan administrator's claim determination will

34408456v.1

be reviewed under the arbitrary and capricious standard of review. *Estate of Kevin Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009); *Firestone Tire & Rubber Co. v. Bruch*, 489, U.S. 101, 115 (1989). Under the arbitrary and capricious standard, judicial review is limited to the administrative record, and discovery beyond that record is generally impermissible. The administrative record is "only that evidence that was before the administrator when he or she made the decision being reviewed. *Shvartsman v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 80328, *10 (D.N.J. June 11, 2012). As a result, discovery in ERISA cases is restricted accordingly. *Hilbert v. Lincoln Nat'l Life Ins. Co.*, 2016 U.S. Dist. LEXIS 22251, at *2 (M.D. Pa. Feb. 24, 2016) (noting that "broad discovery does not necessarily apply in the context of ERISA" and that "in an ERISA case ... where the abuse of discretion standard applies, the review is limited to the administrative record and further discovery is generally not permitted").

Despite these well-established limitations on discovery, Plaintiff sought to expand the administrative record by seeking discovery on: (1) the completeness of record, (2) the plan administrators' financial conflict of interest, and (3) discovery regarding First Unum's affirmative defenses. (ECF 18, Plaintiff's Motion to Confirm Discovery Rights). After a full briefing of the issues related to the scope of discovery in this ERISA enforcement action, Magistrate Judge Leda Dunn Wettre properly denied Plaintiff's motion allowing Plaintiff to serve one interrogatory regarding compensation and performance evaluations of First Unum's claims and medical personnel involved in Plaintiff's LTD claim decision. (ECF 23, Memorandum Opinion and Order of Magistrate Judge Leda Dunn Wettre).

Judge Wettre's ruling aligns with Third Circuit precedent and appropriately limits discovery to the administrative record. Plaintiff failed to demonstrate a reasonable suspicion of misconduct sufficient to warrant completeness of record discovery and the significant extra-record

-4-

conflict of interest discovery he seeks. Plaintiff's attempt to compel extensive extra-record discovery lacks merit, and Judge Wettre's sound decision on the scope of discovery should be affirmed.

## **LEGAL ARGUMENT**

### A.    **Standard of Review on Appeal**

Plaintiff's appeal cites the incorrect standard of review applicable to a magistrate judge's decision on a non-dispositive discovery dispute. The appropriate standard in this appeal is abuse of discretion.

Ordinarily, a magistrate judge's decision can be overturned only to the extent that the ruling is "clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A). The party appealing a magistrate judge's decision bears the burden of demonstrating that the decision meets the standard for reversal. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004). A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Further, "[a] ruling is 'contrary to law' when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). "A district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000) (citations omitted). Under the clearly erroneous standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently. *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996) (*quoting Toth v. Alice Pearl, Inc.*, 158 F.R.D. 47, 50 (D.N.J.1994)).

-5-

However, in the context of discovery disputes – such as the present matter – an even more deferential abuse of discretion standard applies. A magistrate judge's discovery ruling "is entitled to great deference and is reversible only for an abuse of discretion." *Kresefsky v. Panasonic Commc'ns and Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996); *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)("Where the magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion."); *see also Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F. 3d 124, 138 (3d Cir. 2000)(discovery orders reviewed for abuse of discretion). The deferential standard is "especially appropriate where the Magistrate Judge has managed the case from the outset and developed a thorough knowledge of the proceedings." *Lithuanian Commerce Corp.*, 177 F.R.D. at 214 (quoting *Pub. Interest Research Grp. v. Hercules, Inc.*, 830 F.Supp. 1525, 1547 (D.N.J. 1993), *aff'd on other grounds and rev'd on other grounds*, 50 F.3d 1239 (3d Cir. 1995).

An abuse of discretion occurs "when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976); *Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997) (noting that there is "particularly broad deference given to a magistrate judge's discovery rulings").

## B.    Legal Standard Governing Scope of ERISA Discovery

When, as here, the plan administrator -- First Unum – is vested with discretionary authority to determine eligibility for disability benefits or to construe the plan's terms, "the arbitrary and capricious standard of review is applied." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).  The

-6-

arbitrary and capricious standard of review limits the court's evaluation of ERISA claims to the administrative record, which consists only that evidence "that was before the administrator when it made the decision being reviewed." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997); *see Johnson v. UMWA Health & Ret. Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005)("This Court has made clear that the record for arbitrary and capricious review of ERISA benefits denial is the record made before the Plan administrator, which cannot be supplemented during the litigation.").

Under this deferential standard, the administrator's decision will be upheld if it is supported by substantial evidence. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009). That is, a district court reviewing a plan administrator's claim decision "can overturn the decision…only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 234. "The concept of limiting a court's review to the administrative record derives from the nature of an ERISA review proceeding and the administrative appeal process, which is meant to encourage internal and inexpensive resolution of benefit claims." *Dandridge v. Raytheon Co.*, 2010 U.S. Dist. LEXIS 5854, *6 (D.N.J. Jan. 26, 2010). Thus, discovery in an ERISA case is limited by the statutory goal of providing an expeditious, inexpensive, and efficient method of resolving claims. *Delso v. Trustees of Ret. Plan for Hourly Employees of Merck & Co., Inc.*, 2006 U.S. Dist. LEXIS 76369, at *6-7 (D.N.J. Oct. 20, 2006); *see also O'Sullivan v. Metro Life Ins. Co.*, 114 F. Supp. 2d 303, 309 (D.N.J. 2000). Therefore, "[c]ourts cannot simply grant a plaintiff's discovery request where she has a groundless hope of finding some proof of bias after a long and costly search." *Delso*, 2006 U.S. Dist. LEXIS 76369 at * 7.

To justify discovery in ERISA cases, courts within the Third Circuit have required plaintiffs to make "a good-faith allegation of a procedural or structural conflict of interest[,] but

not for matters that merely speak to the merits of the administrator's decision." *Mainieri v. Board of Trs. Of Operating Eng'r's Local 825 Pension Fund*, 2008 U.S. Dist. LEXIS 71247 at \*9 (D.N.J. Sept. 10, 2008). Moreover, any permissible discovery remains subject to Federal Rule of Civil Procedure 26(b), which bars unduly burdensome or overly costly discovery, and discovery of cumulative materials. *See, e.g., Evans v. Employee Benefit Plan*, 2006 U.S. Dist. LEXIS 95782, at \*4 (D.N.J. Jun. 6, 2006).

First Unum does not deny the inherent conflict that exists when an entity is the plan administrator and the entity that pays the claim. However, the mere existence of such a conflict does not change the standard of review or make it less deferential. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Here, Judge Wettre correctly determined – consistent with well-settled Third Circuit precedent – that Plaintiff failed to demonstrate entitlement to expansive extra-record discovery. Plaintiff's discovery requests were properly denied.

### C.    The Magistrate Judge Properly Determined That Plaintiff is Not Entitled to Extra-Record Discovery Regarding The Completeness Of The Administrative Record Under Third Circuit Law

Judge Wettre correctly determined that Plaintiff's STD claim file is not part of the administrative record for the LTD claim at issue in this litigation. As outlined below, *infra* 1, and extensively discussed in Defendant's opposition to Plaintiff's motion to confirm discovery rights, (ECF 21 at PageID: 458-464), the STD and LTD claims are separate and distinct, arising under separate policies. Additionally, the STD claim, which concerned a pelvic fracture, was neither considered by nor before the LTD claim administrator when it adjudicated the LTD claim, which involved depression.

Under Third Circuit precedent, in accordance with ERISA regulations, administrative record is defined as "materials before the fiduciary who makes the benefit decisions on internal review, and it typically contains relevant plan documents (such as an insurance policy), the claim

-8-

file (the claim, supporting information supplied by the claimant, as well as information related to the claim that was considered, collected, or generated by the fiduciary), and the fiduciary's final determination with respect to the claim." *Noga v. Fulton Fin. Corp. Emple. Benefit Plan*, 19 F.4th 264, 272 (3d Cir. 2021). ERISA regulations further clarify what the plan administrator must consider when deciding benefit claims (i.e. "relevant" documents and information). Specifically, "a document, record or information shall be considered "relevant" to a claimant's claim if such document record or information:

    i.    Was relied upon in making the benefit determination;

    ii.    Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

    iii.    Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

    iv.    In the case of a group health plan or plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis without regard to whether such advise or statement was relied upon in making the benefit determination."

29 C.F.R. § 2560.503-1(m)(8).

       Plaintiff's reliance again on out-of-Circuit decisions that broadly expand the scope of the administrative record is misplaced. (Plaintiff's appeal, ECF 26-1 at PageID:636-637). As Judge Wettre correctly noted, Third Circuit decisions do not define the "scope of materials subject to review so broadly." (ECF 23 at PageID: 604). Simply put, the Third Circuit is clear in what constitutes the "whole" administrative record. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)(finding that under the arbitrary and capricious standard of review, the court looks to the record as a whole, and that "whole" record consists of evidence that was before the

administrator when the decision being reviewed was made); *Shvartsman v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 80328, at * 10 (D.N.J. June 11, 20212)(The administrative record is comprised of "only that evidence that was before the administrator when he or she made the decision being reviewed.") Plaintiff's attempt to broaden this definition is unsupported by controlling law.

### 1.    The STD Claim File Is Not Part of the Administrative Record.

Plaintiff argues that Judge Wettre's determination that the STD claim file was not part of the LTD record is legally and factually incorrect. However, the administrative record and the parties full briefing do not support Plaintiff's position. Judge Wettre's determination that the STD claim file is not part of the LTD record is correct, consistent with the record, and should be affirmed on appeal.

Plaintiff incorrectly argues that his physical disability and mental health disability is a single claim. That is not the case. Plaintiff applied for short term disability benefits in September 2019 while he was on leave of absence from work due to a non-disability issue.[1] His STD claim in September 2019 involved a pelvic fracture and concluded with his release to work without restrictions on November 1, 2019. (ECF 18-7 at PageID: 390). Approximately two months later, in January 2020, Plaintiff filed a claim for disability benefits due to depression. (ECF 21-2 at PageID: 481-484). Plaintiff's claim for a pelvic fracture, that he received in a sports related accident, in no way arose from the same set of facts as his claim for depression. Despite Plaintiff's insistence to the contrary, the two claims were entirely distinct from one another and occurred at separate times. Plaintiff recovered from his pelvic fracture in November 2019 and was released to return to work. Plaintiff's first day missed from work due to depression was January 3, 2020, and

---

[1] Plaintiff took leave of absence on September 16, 2019 for a non-disability reason which was not related to his claimed disability for pelvic fracture or depression. ECF 21-1 at PageID: 475.

the treatment provider who was treating him for depression advised Plaintiff to stop working as of January 3, 2020. (ECF 21-2 at PageID: 481, 483). Thus, for approximately two months, Plaintiff did not have any medical condition, or a combination of medical conditions, which prevented him from working in his occupation.

Plaintiff argues that he became severely depressed when he learned that he had a 50% chance of developing amyotrophic lateral sclerosis ("ALS") and that this disability occurred *before* he fractured his pelvis on September 27, 2019. He cites to excerpts from the administrative record that he believes support this position. However, the excerpts cited to do not support the position that the depression arose *prior* to the pelvic fracture. Plaintiff did not file a disability claim for depression in September 2019 or anytime prior to January 2020, yet filed a claim for benefits for the pelvic fracture in September 2019. And, per the claim that he filed in January 2020, he stated that he was unable to work due to depression beginning on January 3, 2020, not any time prior to January 2020.

Plaintiff then argues that Plaintiff advised First Unum that although he was cleared to return to work on November 1, 2019, he did not return to work due to a subsequent impairment (i.e., depression). However, during a phone call with First Unum on November 26, 2019, Plaintiff advised the benefits specialist that he was released to return to work around November 1, 2019 and "can perform all duties of his occupation at this time." (ECF 18-7 at PageID: 396). Other than Plaintiff's mere say so, there is no documented support for his argument that he remained continuously disabled due to his pelvic fracture and depression throughout the elimination period under the LTD Plan, or that the two alleged disabling conditions – which occurred at different times under a different set of circumstances – were a single and continuous disability. To the contrary, and as made clear by the excerpts of the administrative record produced by Plaintiff, he

-11-

recovered from the pelvic fracture as of November 1, 2019, and was released to return to work. His subsequent disability claim due to depression did not arise until January 2020. These facts underscore that the two claims arose independently, at separate times, and are not part of a single, continuous disability.

Plaintiff's assertion that First Unum deliberately excluded the STD claim file from the LTD administrative record is equally unpersuasive and should be rejected. The STD and LTD claims were adjudicated under separate policies. Plaintiff has presented no evidence that the STD claim, arising from a pelvic fractur, *as a whole* was relied upon or considered by First Unum when evaluating the LTD claim arising from depression. (ECF 23 at PageID: 605). To the extent any portion of the STD claim file was relevant to the LTD claim, or used in the evaluation of Plaintiff's LTD claim, it was added to the LTD claim file and is part of the 775-page administrative record. The administrative record is therefore complete and accurate as it pertains to the LTD claim.

Additionally, Plaintiff references two cases in which First Unum or its related entities produced the STD claim in the LTD administrative record and defines that as First Unum "regularly" producing the STD claim file. (ECF 26-1 at PageID: 637). Two situations can hardly be defined as a "regular" practice of producing the STD claim file. To reiterate, any portion of the STD claim which was used in the evaluation of Plaintiff's LTD claim is part of the administrative record. That Plaintiff is aware of two occasions, unrelated to his claim, where the whole STD claim file was produced by First Unum is insufficient to warrant extra-record discovery in this matter. Isolated occurrences cannot support Plaintiff's speculative and unfounded claim that the entire STD file is relevant here.

The administrative record is the complete record which was relied upon by the plan administrator for its LTD claim determination. Judge Wettre's determination that the STD claim

file is not part of the administrative record is firmly grounded in the evidence and controlling law. Plaintiff has failed to demonstrate any basis for overturning this conclusion, and Judge Wettre's decision should be affirmed.

### D. The Magistrate Judge Properly Determined that Plaintiff Did Not Demonstrate A Reasonable Suspicion Of Misconduct To Warrant Conflict Of Interest Discovery

Plaintiff argues that Judge Wettre applied the wrong standard regarding his request for conflict-of-interest discovery. Plaintiff's arguments for conflict-of-interest discovery rest on a fundamental misinterpretation of legal precedent and governing standards. He argues that he is not required to make a special showing to demonstrate that conflict of interest should be permitted as there is no text in ERISA regulation or Federal Rule of Civil Procedure which limit discovery in ERISA actions. Plaintiff is simply mistaken.

Plaintiff is not entitled to extra-record discovery simply because First Unum is the administrator and payor of benefits. The sole fact that an insurer is the administrator and payor of the claim is insufficient to warrant extra record discovery. *See Hocheiser v. Liberty Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 195749, at *12-13 (D.N.J. Nov 13, 2018)("Defendants also correctly point out that, under *Glenn*, 'such a conflict is but one factor among many for the Court to consider in determining whether Liberty abused its discretion in denying benefits.' Absent more, the singular fact that Liberty administers and pays claims is not by itself enough to open the door to discovery of extra-record materials."); *Irgon v. Lincoln Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 162703, at *13-14 (D. N.J. Nov. 15, 2013)(rejecting plaintiff's request for conflict-of-interest discovery as plaintiff failed to meet his burden of establishing a "reasonable suspicion of misconduct" finding that plaintiff must identify a reasonable suspicion that the conflict of interest somehow impacted the defendant's final decision of denial); *see also* ECF No. 16-2, Defendant's Exhibit 2 to Defendant's Pre-Motion Letter at Page ID: 321, *Nespole v. First Unum Life Ins. Co.*, Civ. No.

-13-

2:19-cv-08756, (D.N.J. Feb. 4, 2021). Additionally, a court need not grant discovery beyond the administrative record if the effect of a conflict may be evaluated by examining the thoroughness of the administrator's review, which can be based on the administrative record. *Irgon*, 2013 U.S. Dist. LEXIS 162703, at *14.

Where a party alleges a procedural or structural conflict of interest, courts have, on occasion, permitted some limited discovery outside of the administrative record. *See, e.g., Post v. Hartford Ins. Co.*, 501 F.3d 154, 168 (3d Cir. 2007). However, as Circuit courts have cautioned, discovery regarding a purported conflict of interest "must be allowed sparingly and, if allowed at all, must be narrowly tailored so as to leave the substantive record essentially undisturbed." *Denmark v. Liberty Life Assur. Co. of Boston*, 566 F.3d 1, 10 (1st Cir. 2009); *see also Warner v. Unum Life Ins. Co.*, 2013 U.S. Dist. LEXIS 105067, at *15-16 (N.D. Ill. July 26, 2013)("The Supreme Court's decision in *Glenn*…[did] not open up ERISA cases to the full discovery allowed in typical civil cases.").

This is not a case where the structural conflict of interest carries any weight in the analysis. In *Glenn*, the Supreme Court instructed judges to weigh a conflict of interest as one factor while taking into account other considerations. *Glenn*, 554 U.S. at 117. The *Glenn* Court held that a conflict "should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision…It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy." *Id.* at 117. Plaintiff bears the burden of showing that structural conflict influenced First Unum's decision. *Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1173 (3d Cir. 1992); *see also Dolfi v. Disability Reinsurance Mgmt. Servs., Inc.*, 584 F.Supp.2d 709, 730 (M.D. Pa. 2008).

While some courts within the Third Circuit have permitted a plaintiff to engage in certain limited conflict of interest discovery, Judge Wettre correctly noted that this Court has denied such requests where a plaintiff does not demonstrate a reasonable suspicion of misconduct. Here, based on well-established caselaw, Judge Wettre properly denied Plaintiff's attempt to seek expansive conflict interest of discovery relying solely on the fact that a structural conflict exists without demonstrating a reasonable suspicion of misconduct by the fiduciary. (ECF 23 at PageID: 608-614).

Plaintiff's appeal reiterates the same arguments which were considered and rightly rejected by Judge Wettre, namely that a structural conflict, without more is sufficient to justify extra-record discovery, and that even if a showing of misconduct is required, Plaintiff has met his burden to demonstrate a reasonable suspicion of misconduct.[2]  Plaintiff states a few reasons for why he meets this standard. Judge Wettre considered the same arguments posed by Plaintiff on this appeal, and in a well-reasoned decision, determined that Plaintiff failed to demonstrate a reasonable suspicion of misconduct or procedural irregularities to warrant extra record discovery in this ERISA enforcement action.

First, Plaintiff argues that First Unum and its related entities' history of biased determinations is somehow sufficient to satisfy reasonable suspicion of misconduct in this matter. This Court rightly rejected this argument declaring that the Court "is not convinced that First Unum's entry into the RSA some twenty years ago creates a reasonable suspicion that the challenged claims decision here was affected by a conflict of interest." (ECF 23 at PageID: 611). The Court further noted that the fact that the RSA is still in effect "does not per se create a

---

[2] The case law cited herein in Section D, along with the caselaw presented in Defendant's opposition to Plaintiff's motion to confirm discovery rights (ECF 21) and in Judge Wettre's December 4, 2024 Memorandum Opinion and Order (ECF 23) demonstrates that Plaintiff's reliance solely on a plan administrator's structural conflict, without more, is insufficient to grant extra-record conflict of interest discovery.

-15-

reasonable suspicion of an actual conflict that impacted the claims decision at issue." (*Id.*) This Court's determination that the RSA does not create a reasonable suspicion that the herein claims decision was affected by a conflict of interest is consistent with numerous courts across the country which have considered and rejected the claim that First Unum (or its related entities) had a conflict of interest due to its history of denying claims.[3] Importantly, this Court also found that Plaintiff did not point to any nexus between First Unum's historical misconduct and any suspected misconduct pertaining to his claim. (ECF 23 at PageID: 611). Thus, historical allegations – particularly those related to conduct from decades ago – do not create a reasonable suspicion of misconduct in this specific case.

Next, Plaintiff points to First Unum's use of tracking reports and other tracking metrics to argue that he has demonstrated a reasonable suspicion of misconduct. Plaintiff's reliance on First

---

[3] *Wittmann v. Unum Life Ins. Co. of Am.*, 793 F. App'x 281, 287-88 (5th Cir. 2019)("[C]ourts do not assume that Unum is biased every time it denies a claim. Instead, [plaintiff] must establish that Unum has engaged in procedural irregularities on the strength of her own evidence."); *St. Onge v. Unum Life Ins. Co. of Am.*, 559 Fed. Appx. 28, 31 (2d Cir. 2014)(Plaintiff did not present any evidence that Unum "has a history of biased claims administration."); *Truitt v. Unum Life Ins. Co. of Am.*, 729 F.3d 497, 515 ("Given Unum's 'new claims-handling practices'…and our 'case-specific' finding that Unum gave careful consideration of Truitt's claim, we find that the district court [which gave greater weight to the conflict due to Unum's history of biased claims administration] improperly emphasized Unum's structural conflict."); *Kamerer v. Unum Life Insurance Company of America*, 251 F.Supp.3d 349, 352, (D. Mass. 2017)( "This court will not 'assume Unum is biased very time it denies a claim' simply because it employed unfair claims practices more than a decade ago, particularly in light of changes to claim processing it has since made."); *Mercado v. First Unum Life Ins. Co.*, 2013 U.S. Dist. LEXIS 34275, * 74-75 (citing a joint letter dated January 6, 2009 from the Commissioners of Insurance of Maine, Massachusetts, Tennessee, and New York that their most recent examination of the company demonstrated that the types of systemic misconduct found to have occurred previously are no longer present); *Daniel v. UnumProvident Corp.*, 2010 U.S. Dist. LEXIS 115171, *47 (E.D.N.Y. 2010) (while noting that the company may have had a history of biased claims administration during the decade ending in 2003, the conflict of interest evidenced in that history is offset, in part, by the active steps Unum Life took to promote accuracy in its claims management process; *Ain v. Unun Life Ins. Co. of America*, 2009 WL 5126536, *2 (D. Col. 2009)(finding that the RSA was irrelevant to the plaintiff's claim because "it is undisputed that the claims handling practices occurred well before Defendant's decision to investigate Plaintiff's claim . . ."); *Cagle v. Unum Life Ins. Co. of America*, 2009 WL 995544, *16 (E.D. Mo. 2009)(court rejected plaintiff's reliance upon the RSA and the Langbein article because neither, in and of themselves, provide any evidence that the plaintiff was denied disability benefits due to a conflict or any procedural irregularity).

Unum's use of tracking reports is similarly unavailing. Plaintiff's attempt to ascribe sinister motives to routine processes of an insurance company is a transparent effort to manufacture a procedural irregularity or conflict where none exists. In fact, Plaintiff even acknowledges in his underlying motion that "there may be good business reasons for the underwriting and finance departments to track this information" (ECF 18-1 at PageID: 349) and that the use of such data could be "innocuous" (ECF 22 at PageID: 522). As Judge Wettre correctly noted, Plaintiff failed to offer any evidence from the administrative record to support his speculation that tracking reports impacted his claim determination. (ECF 23 at PageID: 612); *see also* **Exhibit 1** – *Mercer v. Unum Life Insurance Co. of America, et al.*, Civ. No. 3:22-cv-337 (M.D. Tenn. Jan. 3, 2025) (the court finding that the "plaintiff failed to identify any evidence that the weekly tracking reports *actually* influenced the decision to deny their claim.")

Moreover, as discussed in detail in Defendant's opposition to Plaintiff's motion to confirm discovery rights, Plaintiff's discovery request related to tracking reports and other metrics is a mere fishing expedition to impermissibly expand the administrative record. (ECF 21 at PageID: 469-472). Tracking reports are used by insurers for inventory management purposes, not for individual claim determinations. Specifically, the weekly tracking reports do not contain any financial targets, dollar amounts of information relating to claims reserves, and do not contain any data about a claimant's individual claim. (ECF 21 at PageID: 469; ECF No. 14-7 PageID: 271, 274). Additionally, weekly tracking reports are not considered, reviewed or used as part of the determination of Plaintiff's claim by those who are involved in Plaintiff's claim decision and appeal decision. (ECF 21 at PageID: 469-470, see also ECF 16-1, Exhibit 1 to Defendant's Pre-Motion Letter, Declaration of Director Melissa Porter, PageID: 314, ¶ 13). Weekly tracking reports are also not considered, reviewed or used by the Director who managed the person who upheld the

-17-

34408456v.1

decision on Plaintiff's appeal of the claim determination. (*Id.*) Thus, none of the individuals involved in any manner with Plaintiff's claim considered or used that information as part of the claim determination.

Importantly, the recovery plan data contained within the weekly tracking reports that Plaintiff references do not suggest the outcome of any one claim but provide a historical perspective of how an aggregate group of claims with similar demographics, such as age and impairment, may perform based upon historical data. The insurers use this data to assist in setting premiums, to calculate reserves in order to cover anticipated losses, to forecast profits, etc. There is nothing nefarious about collecting such actuarial and predictive data. *See Jue v. Unum Group*, 2021 U.S. Dist. LEXIS 23774, *43-44 (N.D. Ca. Feb 8, 2021)("Unum's use of forecasts and metrics as a way to manage its business and assess employees is not on its own evidence of bad faith. The evidence submitted indicates that Unum used these tools reasonably and did not enforce strict or rigid quotas based on these forecasts.") Plaintiff does not offer any evidence from the administrative record to support his speculation that the tracking reports impacted his claim determination. (ECF 23 at PageID: 612). Plaintiff's failure to show any connection between tracking reports and his claim decision further highlights the baseless nature of his discovery request.

Plaintiff also argues that he cited a "multitude of evidence and case law related to Unum Group's history of financially incentivizing medical and claims personnel to work towards denying claims." (ECF 26-1 at PageID: 643). While First Unum denies that Plaintiff cited a "multitude of evidence and case law" Judge Wettre, permitted Plaintiff to serve an interrogatory to inquire whether the compensation or performance evaluations of First Unum's claims and medical personnel involved in Plaintiff's LTD claim decision was based on the outcome of their claims

determinations. (ECF 23 at PageID: 613). Importantly, discovery in ERISA cases is limited by the statutory goals of providing an expeditious and inexpensive method of resolving claims, and therefore "[courts cannot simply grant a plaintiff's discovery request where she has a groundless hope of finding some proof of bias after a long and costly search" *Delso v. Tr. Of the Ret. Plan for the Hourly Emples. of Merck & Co.*, 2006 U.S. Dist. LEXIS 76369, at *6-7 (D.N.J. Oct. 20, 2006); *Conkright v. Frommert*, 130 S.Ct. 1640, 1649 (2010) (By enacting ERISA "Congress sought 'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'"). Thus, "courts have considerable latitude in deciding whether discovery outside the scope of the administrative record is appropriate in order to achieve ERISA's statutory goals. *Irgon*, 2013 U.S. Dist. LEXIS 162703, at *10. Here, after considering the relevant case law and the parties' briefing, Judge Wettre appropriately limited Plaintiff to a single interrogatory. This targeted discovery is sufficient to appropriately balance the need for information with ERISA's goal of providing an efficient and cost-effective dispute resolution process. Plaintiff should not be permitted any further discovery where he has failed to come forth with any factual support from the administrative record suggesting that the structural conflict influenced the administration of his claim. *See Hays v. Provident Life & Accident. Ins. Co.*, 623 F. Supp. 2d 840, 844-45 (E.D. Ky. 2008)("[G]iven that [plaintiff] has not come forward with any information suggesting the influence of bias in the administration of her claim, the Court will not permit discovery regarding individual employees of Provident, including pay records and personal files."); *see also* ECF No. 16-2, Defendant's Exhibit 2 at Page ID: 322- *Nespole v. First Unum Life Ins. Co.*, Civ. No. 2:19-cv-08756, (D.N.J. Feb. 4, 2021) (The court agreeing with Defendant's position that "because the reviewing doctors do not make the final decision on whether a claim is paid or denied, the information regarding their

-19-

remuneration or statistics about their aggregated number of reviews is not relevant. It certainly does not meet the standard that provides a rare grant of discovery in an ERISA case.")

Finally, Plaintiff argues that First Unum's alleged "inconsistent handling of Plaintiff's STD claim and LTD claim is suggestive of material procedural irregularity that suggests that Unum acted as a conflicted fiduciary in denying Plaintiff's claim." (ECF 26-1 at PageID: 644). Plaintiff is under the mistaken belief that approval of an STD claim means automatic approval of an LTD claim (ECF 26-1 at PageID:637). This notion is rejected by Third Circuit case law and was properly rejected by Judge Wettre who correctly observed that Plaintiff's STD and LTD claims relied on different disabilities. As detailed in Section C.1 above, Plaintiff's undoubtedly filed two separate claims arising from two different alleged disabling conditions under two separate and distinct policies.

Plaintiff also incorrectly relies on *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 848 (2d Cir. 2011) to argue that First Unum reversed its claim decision to award benefits without receiving any new medical information to support the change in position. (ECF 26-1 at PageID: 638). Plaintiff again is misconstruing the facts. The STD claim and LTD claim are two separate and distinct claims stemming from separate and distinct policies (see Section C.1 above). While First Unum approved Plaintiff's claim for benefits under the STD plan, it never approved benefits under the LTD plan. Therefore, First Unum did not "reverse" its decision as to Plaintiff's LTD claim.

Additionally, Plaintiff argues that the psychiatric consultant's failure to evaluate Plaintiff prior to rendering an opinion is evidence of abuse of discretion and suggestive of a procedural conflict. However, Plaintiff does not cite to any case law which requires a plan administrator's physician to evaluate a claimant prior to rendering an opinion. To the extent Plaintiff relies on the lack of an IME to suggest a procedural irregularity or conflict of interest, that argument unavailing.

-20-

Courts have rejected similar arguments, finding that the absence of an IME does not constitute a procedural irregularity. Rather, such an argument directly implicates the substantive merits of the administrator's decision – whether the denial of benefits was arbitrary and capricious – rather than any purported procedural irregularity. *See Irgon*, 2013 U.S. Dist. LEXIS 162703, at *19 (rejecting the argument that an administrator's failure to conduct an IME constitutes procedural irregularity and holding that it instead concerns the merits of the denial decision); *see also Nespole v. First Unum Life Ins. Co.*, Civ. No. 2-19-cv-08756 (D.N.J. Feb 4, 2021), (ECF 16-1 at PageID: 322)(the court concurring with *Irgon* that failure to conduct an IME is not a procedural irregularity bur rather a dispute regarding the merits of the administrator's determination). Crucially, discovery into the merits of the plan administrator's decision is not permitted in ERISA matters. *Mainieri v. Board of Trs. Of Operating Eng'r's Local 825 Pension Fund*, 2008 U.S. Dist. LEXIS 71247 at *9 (D.N.J. Sept. 10, 2008). By contending that a lack of IME is suggestive of a procedural irregularity or conflict of interest, Plaintiff is effectively seeking to circumvent ERISA's well-established limits on discovery, attempting to reframe a substantive challenge as a procedural defect.

Additionally, Plaintiff baselessly speculates that First Unum's denial of Plaintiff's claim was potentially due to the "significant financial value" of his LTD claim. Plaintiff does not cite to any part of the administrative record to support his allegations of procedural irregularity in the handling of his LTD claim.

### E.    Plaintiff's Submission of New Evidence on Appeal is Improper and Should Be Rejected

First Unum objects to Plaintiff's submission of Exhibit A (Unum's 2020 Annual Incentive Plan), and Exhibit B (2023 Performance Plan) (ECF 26-3 and ECF 26-4) as they were not part of the record before Judge Wettre when she issued her ruling on Plaintiff's discovery motion.

Plaintiff's attempt to introduce new evidence at this stage is procedurally improper and legally impermissible.

It is well established that a district court may not consider new evidence on appeal that was not presented to the magistrate judge. Specifically, "[a] Court may not consider new evidence on appeal that was not presented to the Magistrate Judge, as the Court cannot rely on such new evidence to determine whether the Magistrate Judge's ruling was clearly erroneous or contrary to law." *Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, 2021 U.S. Dist. LEXIS 47238, at *12 (D.N.J. March 10, 2021); *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 93 (3d Cir. 1992) (stating that in reviewing a magistrate judge's ruling on a non-dispositive matter, the district court has a "clearly erroneous review function" and is permitted only to review the record that was before the magistrate judge).

Plaintiff's submission of Exhibits A and B is an impermissible attempt to supplement the record on appeal with materials that were never before Judge Wettre. Plaintiff does not even attempt to justify this improper submission under any recognized exception, nor does he offer any explanation as to why these exhibits were not presented at the appropriate time. Simply put, Plaintiff cannot now introduce new evidence to manufacture grounds for appeal that were not raised before the Magistrate Judge.

Plaintiff also fails to demonstrate any nexus between that case and the present matter. Plaintiff's failure to establish any relevance between the Texas case and his own claim further underscores the impropriety and irrelevance of these exhibits. This Court should reject Plaintiff's attempt to improperly expand the record on appeal with new, unexplained, and irrelevant materials.

For these reasons, Plaintiff's submissions of Exhibits A and B should be rejected in its entirety, and this Court should decline to consider them in ruling on Plaintiff's appeal.

**F.    Even if the Clear Error Standard is Applicable, Plaintiff Has Failed to Meet His Burden To Overturn Judge Wettre's Decision**

Assuming *arguendo* that the contrary to law standard applied—which it does not—Plaintiff has still failed to meet his burden. Under Third Circuit precedent, a decision is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law." *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). Under this standard, the reviewing court will not reverse the magistrate judge's determination even if the court might have decided the matter differently. *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996). Here, Plaintiff has not identified any legal authority that Judge Wettre misinterpreted or misapplied. Instead, his arguments rely on speculation and mischaracterizations of the law governing ERISA discovery.

Plaintiff incorrectly asserts that he is entitled to conflict-of-interest discovery without any threshold showing of misconduct. However, courts in the Third Circuit have consistently held that extra-record discovery is only permissible when a plaintiff demonstrates a reasonable suspicion of misconduct, which Plaintiff has failed to do. *See Irgon v. Lincoln Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 162703, at *13-14 (D.N.J. Nov. 15, 2013) (holding that a plaintiff must present a reasonable suspicion that a conflict impacted the decision before obtaining discovery). Judge Wettre's ruling is firmly rooted in this well-established principle, rejecting Plaintiff's unsubstantiated allegations as insufficient to warrant discovery beyond the administrative record.

Furthermore, Plaintiff's reliance on First Unum's historical regulatory issues and tracking reports does not meet the contrary to law standard because courts routinely reject generalized claims of bias absent a specific connection to the claim at issue. *See Hocheiser v. Liberty Mut. Ins. Co.*, 2018 U.S. Dist. LEXIS 195749, at *12-13 (D.N.J. Nov. 13, 2018) (finding that a structural conflict is merely one factor in the analysis and does not automatically justify extra-record

-23-

discovery). Judge Wettre properly applied Third Circuit caselaw in concluding that the lack of a direct nexus between First Unum's past practices or use of tracking reports and Plaintiff's specific claim precluded additional discovery. (ECF 23 at PageID: 611-612).

Plaintiff has not cited any binding authority contradicting Judge Wettre's reasoning, nor has he demonstrated that her decision was based on an erroneous interpretation of the law. Importantly, a district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.*, 191 F.R.D. 59, 68 (D.N.J. 2000). Even under the contrary to law standard, Plaintiff has failed to establish any basis for overturning Judge Wettre's decision, and his appeal should be denied.

## <u>CONCLUSION</u>

Plaintiff has not met his burden under the abuse of discretion or contrary to law standards. Judge Wettre's decision was based on well-established precedent and sound reasoning, and Plaintiff has provided no valid basis to disturb the ruling. Plaintiff's arguments merely rehash the same points that Judge Wettre carefully considered and rejected. Because Plaintiff has failed to demonstrate abuse of discretion or legal error, his appeal should be denied in its entirety and Judge Wettre's December 4, 2024 Memorandum Decision and Order should be affirmed.

Dated: February 4, 2025

Respectfully submitted,

ROBERT T. PINDULIC
MARIAM A. HASHMI
White and Williams LLP
One Gateway Center, Suite 910
Newark, NJ 07102-4200

-24-

Tel: (201) 368-7200
Attorneys for Defendant,
*First Unum Life Insurance Company*

34408456v.1